Docket No. 109033.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
ANGELO THOMPSON, Appellee.

*Opinion filed October 21, 2010.*

JUSTICE KILBRIDE delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Thomas, Garman, and
Karmeier concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justice Freeman.

**OPINION**

Defendant Angelo Thompson was convicted of aggravated
unlawful use of a weapon (720 ILCS 5/24–1.6(a) (West 2004)) and
sentenced to one year in prison. The appellate court reversed
defendant's conviction based on the trial court's violation of Supreme
Court Rule 431(b). Official Reports Advance Sheet No. 8 (April 11,
2007), R. 431(b), eff. May 1, 2007.

We allowed the State's petition for leave to appeal (210 Ill. 2d R.
315(a)). We hold that the appellate court erred in reversing
defendant's conviction based on a violation of Supreme Court Rule
431(b). Accordingly, we reverse the appellate court's judgment and
affirm the judgment of the circuit court.

## I. BACKGROUND

Defendant was charged with six counts of aggravated unlawful use of a weapon. A jury was selected on May 16, 2007. At that time, Supreme Court Rule 431(b) required the trial court to ask each potential juror whether they understood and accepted that defendant was presumed innocent of the charge, the State had the burden of proving him guilty beyond a reasonable doubt, defendant was not required to present any evidence, and his decision against testifying could not be held against him. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007. During jury selection, the trial court informed the prospective jurors as a group that:

> "Under the law, defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on a verdict and it is not overcome unless from all the evidence, you're convinced beyond a reasonable doubt the defendant is guilty. [The] State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on [the] State throughout the case. Defendant is not required to prove his innocence, nor is he required to present any evidence on his own behalf, simply rely on his presumption of innocence."

The trial court asked the prospective jurors individually if the nature of the charge against defendant would affect their ability to be fair and impartial. The court then asked them individually whether they understood the concept of proof beyond a reasonable doubt and the presumption of innocence. The court did not ask any of the prospective jurors whether they accepted those principles. The trial court, however, asked each of the prospective jurors substantially as follows: "[i]f at the end of all the evidence you felt the State had proven its case beyond a reasonable doubt, would you have any problem signing a guilty verdict" and "[i]f, on the other hand, you felt they had not proven the case beyond a reasonable doubt, would you have any problem signing a not guilty verdict."

The trial court did not ask any of the prospective jurors if they understood or accepted that defendant was not required to offer any evidence, but instructed one of them that "[u]nder the presumption of innocence, the defense need not present any evidence." The court

further asked the prospective jurors individually whether their ability to be fair and impartial would be affected if defendant chose not to testify.

Defendant's attorney did not make any objections during *voir dire*, but asked one of the prospective jurors whether he understood that defendant had a right not to testify and the choice against testifying could not be held against the defendant. The prospective juror responded that he understood and accepted that principle.

Following selection of the jury, the testimony at trial established that Chicago police officers Antonio Rosas and Roman Zawada were on patrol driving a marked police truck on January 13, 2005. They responded to an emergency call at approximately 9:19 p.m. When they arrived, the officers observed three men standing outside a two-flat residential building. Defendant was standing on the porch stairs and the officers recognized him as a person wanted for questioning by Chicago police detectives. The officers exited the truck and announced their office. Defendant began running toward the front door of the residence. Officer Rosas followed defendant while Officer Zawada detained one of the other men outside the residence.

As Officer Rosas entered the vestibule of the residence, he observed defendant remove a black steel-handled handgun from his waistband and toss it to the floor. Rosas testified he observed defendant from the back and saw defendant's right hand reaching toward his waistband before defendant threw the handgun. Officer Rosas testified he clearly saw a gun in defendant's hand and was within 10 feet of defendant when he tossed the gun.

Rosas forced defendant against the wall and detained him. He then observed Officer John Kovacs, who was part of an assisting unit, retrieve the handgun from the floor. Officer Kovacs unloaded the handgun and placed it in his waistband.

Officer Rosas testified that the handgun was not cased or registered, defendant did not have a firearm owner's identification card or military identification, and defendant reported that he lived at a different address than where the arrest occurred. On cross-examination, Rosas testified that he did not see a handgun when he first observed defendant. Rosas also stated that he did not see where the gun was concealed in the front part of defendant's waistband or

where defendant pulled the gun from.

Officer Kovacs testified that when he arrived, he observed Officer Rosas chasing a subject into the residence. Kovacs ran inside the residence and saw Rosas holding defendant against the wall. Rosas directed Kovacs to pick up a gun from the floor. The gun was located about two feet from Rosas. Kovacs recovered the handgun and unloaded nine live rounds from the weapon. Kovacs testified there were no people in the vestibule during these events other than Rosas and defendant, and the area was lit with artificial lighting.

Defendant did not testify or present any witnesses in his defense. After closing arguments, the trial court instructed the jury, in pertinent part, that:

> "The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in this case, you are convinced beyond a reasonable doubt that he is guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence. The fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict."

The jury found defendant guilty of aggravated unlawful use of a weapon. Defendant filed a motion for a new trial but did not include any claim that the trial court failed to comply with Supreme Court Rule 431(b). The trial court denied defendant's motion and sentenced him to one year in prison.

On appeal, defendant argued his conviction must be reversed because the trial court failed to comply with Rule 431(b). The appellate court noted that defendant did not object to the alleged violation of Rule 431(b) at trial or include it in his posttrial motion but determined that the alleged error was subject to plain-error review. The appellate court concluded that the trial court committed reversible error by failing to comply with Rule 431(b). Accordingly, the appellate court reversed defendant's conviction and remanded for a

new trial. No. 1–07–2891 (unpublished order under Supreme Court Rule 23).

## II. ANALYSIS

On appeal to this court, the State contends that a violation of Supreme Court Rule 431(b) is not structural error requiring automatic reversal. The State asserts that although this court's decision in *People v. Glasper*, 234 Ill. 2d 173 (2009) addressed a previous version of Rule 431(b), the reasoning of that case also applies to the amended rule involved in this appeal. In accordance with *Glasper*, failure to comply with the amended rule is not *per se* reversible error. The State also contends that defendant forfeited his claim of error and it is not reviewable under either prong of the plain-error rule. Finally, the State contends that the trial court's questioning complied substantially with the requirements of Rule 431(b).

Defendant responds that the trial court's questioning fell far short of the Rule 431(b) requirements and a bright-line rule of reversal should apply for failure to comply with the rule. Alternatively, defendant contends that the violation of amended Rule 431(b) is reversible under the second prong of plain-error review because it affected the fairness of the trial and challenged the integrity of the judicial process. Defendant further argues the forfeiture rule should be relaxed because "a judge's conduct was at issue" and he is entitled to a new trial because the error was not harmless beyond a reasonable doubt.

In addressing the parties' arguments, we must first determine whether the trial court violated Supreme Court Rule 431(b). This issue involves construction of the rule. The interpretation of this court's rules is controlled by the same principles applicable to the construction of statutes. *People v. Santiago*, 236 Ill. 2d 417, 428 (2010). Our objective is to ascertain and give effect to the drafters' intent. *Santiago*, 236 Ill. 2d at 428. The best indication of intent is the language of the rule, given its plain and ordinary meaning. *People v. Marker*, 233 Ill. 2d 158, 165 (2009). When the rule's language is clear and unambiguous, it will be applied as written without resort to aids of construction. *People v. Campbell*, 224 Ill. 2d 80, 84 (2006). The proper interpretation of our supreme court rules is reviewed *de novo*.

*People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

Rule 431(b), as amended, provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

The language of Rule 431(b) is clear and unambiguous. The rule states that the trial court "shall ask" potential jurors whether they understand and accept the enumerated principles. While the prospective jurors may be questioned individually or in a group, the method of inquiry must "provide each juror an opportunity to respond to specific questions concerning the [Rule 431(b)] principles." The committee comments emphasize that trial courts may not simply give "a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments.

Rule 431(b), therefore, mandates a specific question and response process. The trial court must ask each potential juror whether he or she understands and accepts each of the principles in the rule. The questioning may be performed either individually or in a group, but the rule requires an opportunity for a response from each prospective juror on their understanding and acceptance of those principles.

In this case, the trial court failed to comply with Rule 431(b) in several respects. Most notably, the trial court did not question any of the prospective jurors on the third principle, whether they understood and accepted that defendant was not required to produce any evidence

on his own behalf. Rule 431(b) requires trial courts to address each of the enumerated principles. The failure to address the third principle, by itself, constitutes noncompliance with the rule. Additionally, while the trial court asked the prospective jurors if they understood the presumption of innocence, the court did not ask whether they accepted that principle. The rule requires questioning on whether the potential jurors both understand and accept each of the enumerated principles. Therefore, we necessarily conclude that the trial court violated Rule 431(b).

The parties raise several arguments on the impact of the Rule 431(b) violation in this case.

## A. Structural Error

The State first contends that a violation of Supreme Court Rule 431(b) is not a structural error requiring automatic reversal. The State's argument focuses on our recent decision in *Glasper*.

In *Glasper*, this court considered the effect of a trial court's failure to comply with the preamended version of Rule 431(b). *Glasper*, 234 Ill. 2d at 188-89. The preamended version of the rule began with the phrase, "[i]f requested by the defendant." The rule, therefore, required questioning only if requested by the defendant. The amendment to the rule eliminated that introductory phrase.

In *Glasper*, the trial court refused the defendant's request for questioning on the fourth principle of Rule 431(b), whether the prospective jurors understood and accepted that the defendant's failure to testify could not be held against him. *Glasper*, 234 Ill. 2d at 189. This court noted that under the preamended version of the rule, the trial court was required to question the prospective jurors in accordance with Rule 431(b) once the defendant made a request. *Glasper*, 234 Ill. 2d at 189. The trial court clearly violated Rule 431(b)(4) by refusing the defendant's request. *Glasper*, 234 Ill. 2d at 189.

The issue, therefore, became whether the trial court's failure to comply with Rule 431(b) required automatic reversal of the defendant's conviction. *Glasper*, 234 Ill. 2d at 189. This court noted that automatic reversal is required only when an error is deemed "structural." *Glasper*, 234 Ill. 2d at 197, quoting *Rivera v. Illinois*,

556 U.S. ___, ___, 173 L. Ed. 2d 320, 330-31, 129 S. Ct. 1446, 1455 (2009). Structural errors are systemic, serving to " 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " *Glasper*, 234 Ill. 2d at 197-98, quoting *People v. Herron*, 215 Ill. 2d 167, 186 (2005); *People v. Rivera*, 227 Ill. 2d 1, 19-20 (2007). An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence. *Glasper*, 234 Ill. 2d at 196, quoting *Rivera*, 556 U.S. at ___, 173 L. Ed. 2d at 330-31, 129 S. Ct. at 1455.

The Supreme Court has recognized an error as structural only in a very limited class of cases. *Glasper*, 234 Ill. 2d at 198, quoting *Neder v. United States*, 527 U.S. 1, 8, 144 L. Ed. 2d 35, 46, 119 S. Ct. 1827, 1833 (1999); *Johnson v. United States*, 520 U.S. 461, 468-69, 137 L. Ed. 2d 718, 728, 117 S. Ct. 1544, 1549-50 (1997). Those cases include a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction. *Washington v. Recuenco*, 548 U.S. 212, 218 n.2, 165 L. Ed. 2d 466, 474 n.2, 126 S. Ct. 2546, 2551 n.2 (2006).

In *Glasper*, we observed that the trial court's failure to comply with Rule 431(b)(4) did not involve a fundamental right or a constitutional protection. *Glasper*, 234 Ill. 2d at 193. Rather, the error only involved a violation of this court's rules. *Glasper*, 234 Ill. 2d at 193. A violation of a supreme court rule does not require reversal in every instance and this court has applied harmless-error review to violations of our rules. *Glasper*, 234 Ill. 2d at 193.

While Rule 431(b) was intended to help ensure a fair and impartial jury, questioning under the rule could not be considered indispensable to a fair trial. *Glasper*, 234 Ill. 2d at 196. This point was inherent in the language of the preamended rule mandating questioning only if requested by the defendant. *Glasper*, 234 Ill. 2d at 196. Given the language and history of the rule, we concluded that the trial court's violation of Rule 431(b) did not rise to the level of structural error. *Glasper*, 234 Ill. 2d at 199-200.

We acknowledge that our decision in *Glasper* was based, at least in part, on the permissive language of the preamended Rule 431(b). See *Glasper*, 234 Ill. 2d at 200. We emphasized that our holding was

limited to that version of the rule requiring questioning only when requested by the defendant. *Glasper*, 234 Ill. 2d at 200. Nonetheless, the crucial part of our discussion on structural error also applies to the amended Rule 431(b). The essential point is that a trial court's failure to comply with Rule 431(b) does not automatically result in a biased jury, regardless of whether that questioning is mandatory or permissive under our rule. As we held in *Glasper*:

> "If the facts in this case demonstrated that the trial court's failure to question the venire in accordance with Rule 431(b)(4) resulted in defendant being tried before a biased jury, we would not hesitate to reverse defendant's conviction, as a trial before a biased jury would constitute structural error. However, there are no such facts in the instant case. We reject the idea that the trial court's failure to conduct Rule 431(b)(4) questioning makes it inevitable that the jury was biased, particularly when the record before us demonstrates that the jurors in this case were both admonished and instructed against forming an adverse inference against defendant based on his decision not to testify. To do so would require us to presume that citizens sworn as jurors ignore the law and the jury instructions given to them. This notion is contrary to our precedent which instructs us to make the opposite presumption." *Glasper*, 234 Ill. 2d at 200-01.

That statement from *Glasper* applies equally to this case involving the trial court's failure to comply with amended Rule 431(b). While trial before a biased jury is structural error subject to automatic reversal, failure to comply with Rule 431(b) does not necessarily result in a biased jury. Rule 431(b) questioning is simply one way of helping to ensure a fair and impartial jury. See *Glasper*, 234 Ill. 2d at 195-96. Despite the trial court's failure to comply with Rule 431(b) in this case, there is no evidence that defendant was tried by a biased jury. We also note that the trial court did address some of the Rule 431(b) requirements in its *voir dire* and, as in *Glasper*, the jury was admonished and instructed on Rule 431(b) principles.

Although compliance with Rule 431(b) is important, violation of the rule does not necessarily render a trial fundamentally unfair or unreliable in determining guilt or innocence. We conclude that the trial court's violation of the amended version of Supreme Court Rule

431(b) in this case does not fall within the very limited category of structural errors and, thus, does not require automatic reversal of defendant's conviction.

## B. Forfeiture

The parties also raise alternative arguments applying plain-error and harmless-error review to this case. When a defendant has forfeited appellate review of an issue, the reviewing court will consider only plain-error. *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009). Harmless-error analysis is conducted when a defendant has preserved an issue for review. *McLaurin*, 235 Ill. 2d at 495. The application of plain-error or harmless-error review, therefore, depends on whether defendant has forfeited review of the issue.

The State contends that defendant's claim is forfeited and there is no reason to excuse the forfeiture. Defendant concedes his claim is forfeited, but asks this court to relax the forfeiture rule "because a judge's conduct was at issue" and this court has recognized the impracticality of a party objecting to a trial judge's questions or comments.

To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Here, defendant did not object to the trial court's failure to comply with Rule 431(b) or include that issue in his posttrial motion. Accordingly, we agree that defendant has forfeited appellate review of his claim.

In support of his argument on relaxing the forfeiture rule, defendant raises what this court has termed the "*Sprinkle* doctrine." We recently explained that under the *Sprinkle* doctrine, the forfeiture rule may be relaxed when a trial judge oversteps his or her authority in the presence of the jury or when counsel has been effectively prevented from objecting because it would have " 'fallen on deaf ears.' " *People v. Hanson*, No. 106566, slip op. at 33 (June 24, 2010), quoting *McLaurin*, 235 Ill. 2d at 488. The failure to preserve an error will be excused under the *Sprinkle* doctrine only in extraordinary circumstances, however, such as when a judge makes inappropriate remarks to a jury or relies on social commentary instead of evidence in imposing a death sentence. *McLaurin*, 235 Ill. 2d at 488, citing

*People v. Woolley*, 205 Ill. 2d 296, 301-02 (2002); *People v. Dameron*, 196 Ill. 2d 156, 171 (2001). We have stressed the importance of applying the forfeiture rule uniformly except in compelling situations because failure to raise a claim properly denies the trial court an opportunity to correct an error or grant a new trial, thus wasting time and judicial resources. *McLaurin*, 235 Ill. 2d at 488.

In this case, there is no indication that the trial court would have ignored an objection to the Rule 431(b) questioning. We presume that the trial court would have complied with the mandatory language of Supreme Court Rule 431(b) had the error been pointed out at trial. Moreover, defendant does not argue that the trial court overstepped its authority in the jury's presence. A simple objection would have allowed the trial court to correct the error during *voir dire*. Accordingly, we conclude there is no compelling reason to relax the forfeiture rule in this case.

## C. Plain Error

The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances. *People v. Averett*, 237 Ill. 2d 1, 18 (2010). We will apply the plain-error doctrine when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

The first step of plain-error review is determining whether any error occurred. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009). We have already concluded that the trial court erred in violating Supreme Court Rule 431(b).

In plain-error review, the burden of persuasion rests with the defendant. *McLaurin*, 235 Ill. 2d at 495. Defendant does not argue plain-error under the first prong, requiring a finding that the evidence is so closely balanced that the guilty verdict may have resulted from

-11-

the error. Rather, defendant contends that the violation of Rule 431(b) infringed his right to an impartial jury, thus affecting the fairness of his trial and challenging the integrity of the judicial process. Defendant, therefore, contends the error is reversible under the second prong of plain-error review.

Under the second prong of plain-error review, "[p]rejudice to the defendant is presumed because of the importance of the right involved, '*regardless* of the strength of the evidence.' " (Emphasis in original.) *Herron*, 215 Ill. 2d at 187, quoting *People v. Blue*, 189 Ill. 2d 99, 138 (2000). In *Glasper*, this court equated the second prong of plain-error review with structural error, asserting that "automatic reversal is only required where an error is deemed 'structural,' *i.e.*, a systemic error which serves to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " *Glasper*, 234 Ill. 2d at 197-98, quoting *Herron*, 215 Ill. 2d at 186.

A finding that defendant was tried by a biased jury would certainly satisfy the second prong of plain-error review because it would affect his right to a fair trial and challenge the integrity of the judicial process. Critically, however, defendant has not presented any evidence that the jury was biased in this case. Defendant has the burden of persuasion on this issue. We cannot presume the jury was biased simply because the trial court erred in conducting the Rule 431(b) questioning.

Defendant maintains our holding in *Glasper* was based in large part on the permissive language of preamended Rule 431(b). Unlike the preamended rule requiring questioning only upon the defendant's request, the amended rule imposes a duty on trial courts to perform the questioning in every criminal case tried by a jury. Defendant argues that the amendment to Rule 431(b) signifies that this court now views compliance as indispensable to a fair trial.

Our amendment to Rule 431(b) does not indicate that compliance with the rule is now indispensable to a fair trial. As we have explained, the failure to conduct Rule 431(b) questioning does not necessarily result in a biased jury, regardless of whether that questioning is mandatory or permissive under our rule. Although the amendment to the rule serves to promote the selection of an impartial jury by making questioning mandatory, Rule 431(b) questioning is only one method of helping to ensure the selection of an impartial jury. See *Glasper*,

234 Ill. 2d at 195-96. It is not the only means of achieving that objective. A violation of Rule 431(b) does not implicate a fundamental right or constitutional protection, but only involves a violation of this court's rules. *Glasper*, 234 Ill. 2d at 193. Despite our amendment to the rule, we cannot conclude that Rule 431(b) questioning is indispensable to the selection of an impartial jury.

In this case, the prospective jurors received some, but not all, of the required Rule 431(b) questioning. The venire was also admonished and instructed on Rule 431(b) principles. Defendant has not established that the trial court's violation of Rule 431(b) resulted in a biased jury. Defendant has, therefore, failed to meet his burden of showing the error affected the fairness of his trial and challenged the integrity of the judicial process. Accordingly, the second prong of plain-error review does not provide a basis for excusing defendant's procedural default.

### D. Bright-Line Rule of Reversal

Finally, defendant asks this court to adopt a bright-line rule of reversal for any violation of Supreme Court Rule 431(b). Defendant contends that a bright-line rule will ensure trial courts' compliance with the important Rule 431(b) requirements and promote judicial efficiency by eliminating case-by-case review of violations. Defendant asserts that trial courts have violated Rule 431(b) repeatedly and a bright-line rule of reversal would "quickly lead to consistent application of the amended rule."

We acknowledge that the failure to comply with amended Rule 431(b) has been the subject of significant litigation. See *People v. Hammonds*, 399 Ill. App. 3d 927, 950-54 (2010) (collecting cases). Given this case law, it is undeniable that failure to comply with the rule has been a recurring problem. Nonetheless, in *Hammonds*, the appellate court noted that in most cases the violations occurred in the months immediately following our amendment to the rule. *Hammonds*, 399 Ill. App. 3d at 956. The appellate court observed that Rule 431(b) had been unchanged for a decade and the months following the amendment marked an adjustment period unlikely to be repeated. *Hammonds*, 399 Ill. App. 3d at 956.

Consistent with the appellate court's observation in *Hammonds*,

the jury in this case was selected approximately two weeks after our amendment to Rule 431(b) became effective. While defendant urges this court to adopt a bright-line rule of reversal to ensure compliance by trial courts, we do not believe that drastic step is necessary. We will not impose automatic reversal for every violation of Rule 431(b) simply to send a message to our trial courts to comply with the amended rule. We are confident that trial courts will continue to take notice of this important rule and employ all necessary steps to ensure full compliance in every criminal case tried before a jury. We further note that trial courts risk reversal of convictions under ordinary appellate review by failing to comply with Rule 431(b). Accordingly, we decline defendant's request for a bright-line rule of reversal for every violation of Rule 431(b).

## III. CONCLUSION

For the foregoing reasons, we reverse the appellate court's judgment reversing defendant's conviction and remanding this matter for a new trial. The trial court's judgment is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE BURKE, dissenting:

The question presented in this appeal is whether it is plain error for a trial court to fail to ask prospective jurors the questions required by Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007). If we ignore our decision in *People v. Zehr*, 103 Ill. 2d 472 (1984), as the majority does, the answer to this question is "no." But if we consider *Zehr*, as I believe we must under principles of *stare decisis*, then the answer is "yes."

More than 25 years ago, in *Zehr*, this court considered whether a trial court was required to permit inquiry during *voir dire* as to whether the jurors understood and accepted that the State has the

-14-

burden of proving the defendant guilty beyond a reasonable doubt, that the defendant's right not to testify may not be held against him, and that the defendant is presumed innocent. *Zehr*, 103 Ill. 2d at 476. We concluded that such inquiry was required. We held:

> "We are of the opinion that *essential to the qualification of jurors* in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. *If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect*.  It is also *vital to the selection of a fair and impartial jury* that a juror who finds that the State has failed to sustain its burden of proof of guilt beyond a reasonable doubt have no prejudices against returning a verdict of not guilty. We note parenthetically that it is equally important that a juror who finds that the State has sustained its burden of proof have no prejudice against returning a verdict of guilty. \*\*\* '*[E]ach of these questions goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury*' (110 Ill. App. 3d 458, 461), and although they need not have been asked in precisely the form submitted, the subject matter of the questions should have been covered in the course of interrogation on *voir dire*." (Emphases added.)  *Zehr*, 103 Ill. 2d at 477.

The holding of *Zehr* was subsequently codified in Supreme Court Rule 431(b). See 177 Ill. 2d R. 431, Committee Comments, at lxxix (Rule 431(b) "is intended to ensure compliance with the requirements of *People v. Zehr*, 103 Ill. 2d 472 (1984)"). As originally adopted, Rule 431(b) required the trial judge to ask the *Zehr* questions only if requested by the defendant. However, in 2007, the members of this court voted unanimously to amend the rule so as to impose an affirmative duty on trial courts to ask potential jurors, in every case, whether they understood and accepted the principles

> "(1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a

-15-

reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

As *Zehr* explained, the rationale for imposing this duty on trial courts is that only by asking these questions can any hidden biases which a potential juror might harbor be uncovered and that in the absence of such questions the defendant would be deprived of " 'his right to a fair and impartial jury.' " *Zehr*, 103 Ill. 2d at 477, quoting *People v. Zehr*, 110 Ill. App. 3d 458, 461 (1982).

In the case before us, the appellate court reversed defendant's conviction for aggravated unlawful use of a weapon because the trial court did not question prospective jurors in accordance with amended Supreme Court Rule 431(b). Although the majority, like the appellate court, finds that the trial court violated Rule 431(b), the majority reverses the appellate court judgment. Relying on our decision in *People v. Glasper*, 234 Ill. 2d 173 (2009), the majority holds that adherence to our mandatory rule is not essential to a fair trial and, thus, a violation is not *per se* reversible error. Slip op. at 9.

In *Glasper*, this court found that the preamended Rule 431(b) was subject to harmless-error review. I dissented in *Glasper* and in my dissent I expressed my belief that questioning which we held in *Zehr* to be "essential," "vital," and "at the heart" of uncovering bias and prejudice could not be deemed dispensable. *Glasper*, 234 Ill. 2d at 216-32 (Burke, J., dissenting, joined by Freeman, J.). I continue to maintain that belief.

The majority did not overturn *Zehr* in *Glasper,* nor does it do so in the present case. Indeed, the majority does not discuss or even cite *Zehr* in rendering their decision in this case. Yet the majority holdings, both in *Glasper* and here, are directly at odds with our pronouncements in *Zehr*. Compare, *e.g.*, slip op. at 9 ("violation of [Rule 431(b)] does not necessarily render a trial fundamentally unfair") with *Zehr*, 103 Ill. 2d at 477 (it is "vital to the selection of a fair and impartial jury" that the *Zehr* questions be asked). No attempt has been made to explain why *stare decisis* does not require us to follow *Zehr*.

In my view, the failure to ask questions which are not only mandated by this court but which are "vital to the selection of a fair and impartial jury" necessarily amounts to plain error. See *People v. Cole*, 54 Ill. 2d 401, 411 (1973) ("The right to a trial by an impartial tribunal is so basic that a violation of the right requires a reversal"). Because the majority rejects this conclusion and, in so doing, completely disregards our pronouncements in *Zehr*, I dissent.

JUSTICE FREEMAN joins in this dissent.