**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190480-U

Order filed September 17, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0480 Circuit No. 18-CF-530 |
| SERGIO A. ARZOLA, | ) ) | Honorable Cynthia M. Raccuglia, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices O'Brien and Wright concurred in the judgment.

**ORDER**

¶ 1      *Held*:  The circuit court's failure to comply with Illinois Supreme Court Rule
431(b) is not reversible plain error, as the evidence is not closely balanced.

¶ 2      Defendant, Sergio A. Arzola, appeals from his conviction for unlawful delivery of a

controlled substance. He contends that the La Salle County circuit court erred by failing to properly

question jurors in accordance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). We

affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant by indictment with unlawful delivery of a controlled substance (720 ILCS 570/401(c)(1) (West 2018)). On June 17, 2019, the cause proceeded to a jury trial.

¶ 5        During jury selection, the court admonished each panel of jurors of the Rule 431(b) principles. The court told the prospective jurors that defendant is presumed innocent of the charge against him, and that the State must prove defendant's guilt beyond a reasonable doubt. Then the court stated "[t]he defendant doesn't have to testify. He doesn't have to present evidence; and if he does not, then you must not assume anything by that ***. Because he has nothing to prove." The court repeated substantially the same admonishment to each panel of prospective jurors.

¶ 6        The court asked 17 potential jurors whether they understood and accepted "that principle of law" and one juror if she understood and accepted "the principle of law." The court also asked one juror whether he understood and accepted "the principle of the presumption of innocence" and another juror whether she understood and accepted "the presumption of innocence." Several of the improperly questioned potential jurors became members of the jury.

¶ 7        At trial, Allison Beatty testified that on October 12, 2018, officers from the Mendota Police Department conducted a vehicle stop and found her in possession of heroin. To avoid a criminal charge, Beatty completed two controlled drug purchases as a confidential informant for the Tri-DENT task force.

¶ 8        On November 6, 2018, Beatty participated in a controlled drug purchase. Beatty notified Agent Brad Martin of the Tri-DENT task force that she planned to meet with defendant to purchase heroin. Beforehand, Beatty met with Martin and Agent Sherry Barto to prepare for the purchase. The agents gave Beatty a covert camera and $230 in cash. Beatty then drove to defendant's residence. Once there, Beatty went to the door and asked for defendant. After speaking with an

2

individual at the door, Beatty returned to her vehicle. A few minutes later, defendant entered the vehicle. Beatty gave defendant $230, and in return, defendant gave Beatty 13 packages of tinfoil containing heroin. After the purchase, Beatty met Martin and Barto and gave the agents the tinfoil packages.

¶ 9    The State entered the video captured by the covert camera into evidence and published the video to the jury. The video showed Beatty exit her vehicle, speak with a person inside the front door, and return to her vehicle. Approximately two minutes later, defendant entered Beatty's vehicle. While he sat in the front passenger seat, the camera was positioned facing defendant's upper body and face. Beatty indicated that she brought defendant "all [his] money" and "it [was] all there." Defendant then counted out loud and appeared to sift through and shuffle several items in his lap. Defendant looked through his pockets and indicated that "there should be 15." Beatty told defendant that she would contact him for the missing amount.

¶ 10    On cross-examination, Beatty testified that she had consumed drugs in various ways in the past. Beatty had delivered heroin before and allowed someone to use her vehicle to transport heroin. Beatty testified that when first confronted by police on October 12, 2018, she told officers that the heroin discovered on her person belonged to someone else. Later, Beatty told officers that she planned to use the heroin herself.

¶ 11    Martin testified that he was assigned to the drug task force known as Tri-DENT. On November 6, 2018, Beatty informed Martin that she had made arrangements to purchase heroin. In preparation for the purchase, Martin and Barto met Beatty and searched her vehicle. They did not locate any contraband. Martin provided Beatty with $230 and a covert camera to record the purchase. Martin and Barto followed Beatty to defendant's residence. Martin did not lose sight of Beatty's vehicle. Martin watched Beatty walk to the front door of defendant's residence and return

3

to her vehicle. A short time later, defendant exited the residence and entered Beatty's vehicle. After several minutes, defendant returned to the residence. Martin and Barto followed Beatty to a prearranged location. There, Beatty gave Martin the tinfoil packages containing heroin. Martin searched Beatty's vehicle and did not locate money or contraband.

¶ 12        Barto testified that she was a deputy with the Bureau County Sheriff's Department and worked as an agent with Tri-DENT. On November 6, 2018, she surveilled Beatty while she completed a controlled purchase of heroin. In preparation, Barto completed a search of Beatty's person and vehicle. Barto did not locate any contraband. Following the searches, Barto observed defendant enter Beatty's vehicle and exit a few minutes later. After the transaction, Barto followed Beatty to the predetermined location and searched her person and vehicle. Again, Barto did not locate money or contraband.

¶ 13        A forensic scientist at the Illinois State Police crime laboratory testified that she received the tinfoil packages that officers collected from Beatty and identified the substance located therein as heroin.

¶ 14        The jury found defendant guilty. The court sentenced defendant to 12 years' imprisonment. Defendant appeals.

¶ 15                                       II. ANALYSIS

¶ 16        Defendant first argues the circuit court failed to strictly comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) because the court did not ask potential jurors if they understood and accepted the four Rule 431(b) principles. Instead, the court asked jurors if they understood and accepted "that principle of law," "the principle of law," "the principle of the presumption of innocence," and "the presumption of innocence." Defendant also contends the court erred in its Rule 431(b) admonishment where it stated the last two principles out of order. Defendant

4

acknowledges that he forfeited this issue but contends that the issue is a reversible plain error because the evidence is closely balanced.

¶ 17 Under the plain-error doctrine, we must first determine whether a "plain error" occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). "The word 'plain' *** is synonymous with 'clear' and is the equivalent of 'obvious.' " *Id.* at 565 n.2. If we determine that the circuit court committed a plain error, the second step is to determine whether that error is reversible. *Id.* A plain error is reversible when "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *Id.* at 565.

¶ 18 Rule 431(b) requires the court to ask whether each juror

> "understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

Rule 431(b) "mandates a specific question and response process." *People v. Thompson*, 238 Ill. 2d 598, 607 (2010). The circuit court must ask each potential juror whether he or she "understands and accepts" each of the four principles listed in the rule. Ill. S. Ct. R. 431(b) (eff. July 1, 2012); *People v. Wilmington*, 2013 IL 112938, ¶¶ 30, 32. Then, the court must allow each prospective juror the opportunity to respond regarding their understanding and acceptance of those principles. *Thompson*, 238 Ill. 2d at 607.

5

¶ 19    In the present case, the circuit court failed to comply with Rule 431(b) because it did not ask each juror whether they understood and accepted all four principles. See *Wilmington*, 2013 IL 112938, ¶¶ 30, 32. Moreover, it is not clear which principle the court was referencing when, in questioning some jurors, it referred to "that principle" or "the principle." We will assume, *arguendo*, that the court also erred by stating the last two Rule 431(b) principles out of order while admonishing prospective jurors. Because we find the court committed plain error, we must determine whether that error is subject to reversal because the evidence is closely balanced.

¶ 20    To determine if the evidence is closely balanced, "a reviewing court must undertake a commonsense analysis of all the evidence in context." *People v. Belknap*, 2014 IL 117094, ¶ 50. This "inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *People v. Sebby*, 2017 IL 119445, ¶ 53. The court must take a qualitative approach to the evidence and consider it "within the context of the circumstances of the individual case." *People v. Adams*, 2012 IL 111168, ¶ 22. Evidence can be closely balanced when each party presents credible witnesses or where the credible testimony of a witness is countered by evidence that casts doubt on his or her account. *Sebby*, 2017 IL 119445, ¶ 63.

¶ 21    As charged in this case, a person commits the offense of unlawful delivery of a controlled substance when he knowingly delivers a substance containing heroin, and the substance weighs 1 gram or more but less than 15 grams. 720 ILCS 570/401(c)(1) (West 2018).

¶ 22    The State's case predominantly derived from Beatty's testimony. Beatty arranged the controlled heroin buy with defendant after she became a confidential informant. After setting up the buy and being prepped by Martin and Barto, Beatty purchased $230 worth of heroin from defendant. By itself, Beatty's testimony proved that defendant committed the charged offense.

6

Additionally, Beatty's testimony was credible as it was corroborated by the video recording of the heroin buy. The video showed defendant enter Beatty's vehicle, speak with Beatty, and exit the vehicle. Also, the video recorded Beatty state that she had money for defendant. Afterward, defendant proceeded to count out loud, sift through items in his lap, and look through his pockets before announcing that he possessed an incorrect amount.

¶ 23 Martin and Barto's testimony further corroborated Beatty's testimony where the agents searched Beatty and her vehicle before and after the transaction and observed defendant enter and exit Beatty's vehicle. The agents observed that before the transaction Beatty had no contraband and had the $230 given to her to make the heroin purchase. Afterward, Beatty no longer had the $230, and instead, possessed tinfoil packages containing heroin. Forensic testing established that the tinfoil packages collected from Beatty contained heroin.

¶ 24 This evidence was not close. Given the recording and corroborating details from the agents and forensic scientist, the State readily proved that defendant unlawfully delivered heroin to Beatty. Therefore, the court's Rule 431(b) plain error is not reversible plain error.

¶ 25                                                III. CONCLUSION

¶ 26 For the foregoing reasons, we affirm the judgment of the circuit court of La Salle County.

¶ 27 Affirmed.