2022 IL App (1st) 200640-U

No. 1-20-0640

Order filed April 8, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 7797 |
| | ) | |
| MACIO YERGER, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHARON ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Pierce and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for aggravated domestic battery where the trial
court complied with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012).

¶ 2    Following a jury trial, defendant Macio Yerger was convicted of aggravated domestic

battery (720 ILCS 5/12-3.3(a-5) (West 2018)) and sentenced to three years' imprisonment. On

appeal, defendant argues that the circuit court violated Illinois Supreme Court Rule 431(b) (eff.

July 1, 2012) by asking the veniremembers to raise their hands if they did not both understand and accept the principles set out in *People v. Zehr*, 103 Ill. 2d 472 (1984). We affirm.

¶ 3 Defendant was charged by information with aggravated domestic battery predicated on strangling Roxanne Smith on April 14, 2019 (720 ILCS 5/12-3.3(a-5) (West 2018)) (count I); strangling Smith on April 21, 2019 (720 ILCS 5/12-3.3(a-5) (West 2018)) (count II), and; shoving Smith into a window on April 21, 2019, causing great bodily harm (count III) and permanent disfigurement (count IV) (720 ILCS 5/12-3.3(a) (West 2018)). Because defendant does not challenge the sufficiency of the evidence to sustain his conviction we recount the facts to the extent necessary to resolve the issue on appeal.

¶ 4 During *voir dire*, the court admonished the venire:

"Under the law the defendant is presumed innocent of the charges against him and this presumption remains with the defendant at every stage of the trial and your deliberations on your verdict and is not overcome unless and until a jury is convinced beyond a reasonable doubt the defendant is guilty. Does everyone understand and accept this principle of law? Only raise your hand if you do not accept it or do not understand it. Let the record reflect no one has raised their hand.

The State has the burden of proving the defendant guilty beyond a reasonable doubt and the State carries this burden throughout the case. Does everyone understand and accept this principle of law? Raise your hand once again if you do not accept it or you do not understand it. Let the record reflect no one has raised their hand.

And a defendant is not required to prove his innocence. The defendant need not present any evidence at all and rely on the presumption of innocence. Does everyone understand and accept this principle of law? Raise your hand if you do not.

And finally, the defendant does not have to testify and you cannot hold it against the defendant if he chooses not to testify. Does everyone understand and accept this principle of law? Raise your hand if you do not understand or accept it. Let the record reflect no one has raised their hand."

¶ 5 At trial, Smith testified that she and defendant were dating on April 14, 2019. During an argument that evening, defendant flipped Smith's bed while she sat on it. She hit him in the back of the head multiple times, then he choked her for 5 to 10 seconds. She did not suffer any visible injuries.

¶ 6 In the early morning of April 21, 2019, Smith left defendant at her apartment to go to a restaurant and a barber shop where people were gathered. When she returned 10 or 15 minutes later, defendant confronted her about how long she was gone and took her phone. Smith hit defendant and they began "tussling" over the phone. During the confrontation, defendant choked her for 5 to 10 minutes, then threw her by her shoulders into a window. The window shattered, and chunks of glass cut Smith and became lodged in her neck. Defendant called an ambulance and paramedics transported Smith to the hospital. Smith underwent surgery, and sustained scars on her neck and back from the shattered glass.

¶ 7 The State entered a stipulation that a doctor would testify that two foreign objects approximately 0.5 centimeters thick and at least 8 centimeters long were lodged in Smith's left

posterior lateral neck region, and more fragments were lodged in her left paramidline posterior neck.

¶ 8    Following closing arguments, the jury acquitted defendant of count I and found him guilty of counts II-IV. The court denied defendant's motion for a new trial. Following a hearing, the court merged counts III and IV into count II, aggravated domestic battery premised on strangling Smith, and sentenced him to three years' imprisonment. The court denied defendant's motion to reconsider sentence.

¶ 9    Defendant now appeals, arguing that, during *voir dire*, the court failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). Defendant contends that the court did not implement the requisite question-and-response framework when it asked the veniremembers if they understood and accepted the principles set out in *Zehr*, 103 Ill. 2d at 477-78, and instructed them to raise their hands if they did not.

¶ 10    In setting forth this argument, defendant acknowledges that he did not preserve the issue for our review by objecting during *voir dire* and raising the issue in his posttrial motion. See *People v. Thompson*, 238 Ill. 2d 598, 611 (2010) ("To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion."). However, to avoid forfeiture of the claim, defendant requests plain-error review.

¶ 11    The plain-error rule allows us to review unpreserved issues when a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the error "is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.)

*Id.* at 613. Here, defendant only asserts that the evidence was closely balanced. See *People v. Birge*, 2021 IL 125644, ¶ 24 (Rule 431(b) violation is not cognizable under second prong plain error doctrine). The first step of plain-error review is to determine whether error occurred. *Id.* For the following reasons, we find no error.

¶ 12    In *Zehr*, our supreme court explained that potential jurors must know "that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." *Zehr*, 103 Ill. 2d at 477. Thus, Rule 431(b) provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

¶ 13    The rule requires " 'a specific question and response process.' " *People v. Wilmington*, 2013 IL 112938, ¶ 32 (quoting *Thompson*, 238 Ill. 2d at 607). We review compliance with Rule 431(b) *de novo*. *Id.* ¶ 26.

¶ 14    Here, the trial court complied with Rule 431(b). The court explained (1) that defendant was presumed innocent; (2) the State had the burden of proving defendant guilty beyond a reasonable doubt; (3) defendant did not have to present any evidence; and (4) defendant did not have to testify, and the jury could not hold it against him if he decided not to testify. The court recited each principle separately. After reciting a principle, the court asked whether the venire understood and accepted that principle. For the third principle, the court then asked for the veniremembers to raise their hands if they did not. For the other principles, the court then asked the veniremembers to raise their hands if they did not understand "or" accept the principle. Thus, the court asked the veniremembers whether they understood and accepted each principle, and allowed them an opportunity to respond by raising their hands if they did not.

¶ 15    Although not cited by either party, this court's decision in *People v. Gilliam*, 2013 IL App (1st) 113104, is instructive. There, the trial court admonished the veniremembers of the *Zehr* principles, asking after each principle for the veniremembers to raise their hands if they had "any quarrel" with that principle. *Gilliam*, 2013 IL App (1st) 113104, ¶ 49. The court then offered a hypothetical explanation of how the four principles worked in concert. *Id.* The court continued:

> "Is there anybody here *** who cannot apply those four propositions of law in the manner that I've indicated? If so, raise your hand.
>
> All right, then I take it that all of you both understand and accept these four propositions of law. If not, raise your hand." *Id.*

¶ 16    On appeal, the defendant argued that the court violated Rule 431(b) by, *inter alia*, asking whether the veniremembers quarreled with the principles without asking if they understood them. *Id.* ¶ 50. We concluded that the court used the appropriate question and response process to ask

whether the veniremembers understood and accepted the *Zehr* principles by stating: "All right, then I take it that all of you both *understand* and *accept* these four propositions of law. If not, raise your hand." (Emphasis in original.) *Id.* ¶ 52.

¶ 17    Here, as in *Gilliam*, the court employed a question and response format to ask whether the veniremembers understood and accepted the *Zehr* principles. Specifically, the record shows the court asked the veniremembers (1) whether they understood and accepted each *Zehr* principle, (2) to raise their hands if they did not understand and accept the third principle, and (3) to raise their hands if they did not understand "or" accept the other principles. Thus, the court used the appropriate question and response process to ask whether the veniremembers understood and accepted the *Zehr* principles.

¶ 18    Defendant nevertheless contends that the court should have told the veniremembers to raise their hands if they did not understand "and" accept the principles, instead of, for three of the principles, to raise their hands if they did not understand "or" accept them. Functionally, however, asking the veniremembers to raise their hands if they did not understand "or" accept the principles worked identically to asking them to raise their hands if they did not understand "and" accept the principles; in either case, the veniremembers knew to raise their hand if they did not both understand and accept any of the *Zehr* principles.

¶ 19    We also disagree that the court violated Rule 431(b) by asking for a show of hands instead of requiring the veniremembers to verbalize their understanding and acceptance of the *Zehr* principles. See *Birge*, 2021 IL 125644, ¶ 27 (Rule 431(b) does not require jurors' response be conveyed orally rather than by showing of hands); *People v. Joseph*, 2021 IL App (1st) 170741, ¶ 28 (noting that court's request for show of hands if court wrongly assumed that venire accepted

and understood *Zehr* principles "was the functional equivalent of a question that sought to confirm the jurors' acceptance and understanding, tracking verbatim the language that Rule 431(b) requires"); see also *Gilliam*, 2013 IL App (1st) 113104, ¶ 52 (finding that court's request for show of hands if any veniremember did not understand and accept the principles satisfied the requisite question and response process).

¶ 20    Defendant nevertheless maintains that the trial court's process was confusing, comparing his case to *People v. Dismuke*, 2017 IL App (2d) 141203. In *Dismuke*, the court admonished the venire:

> "I am going to explain to you certain principles, and if you understand the principles, agree with those principles and accept those principles, please do not raise your hand and that will signify that you understand, you agree and you accept these principles. If you don't understand or accept these principles or don't agree with them, I would ask that you raise your hand in response to my question." (Emphasis omitted.) *Dismuke*, 2017 IL App (2d) 141203, ¶ 78 (Burke, J., specially concurring).

The court then recited each of the *Zehr* principles, asking the venirepersons after each one to raise their hands if they had "any difficulty or disagreement" with that proposition of law. *Id.* (Burke, J., specially concurring).

¶ 21    On appeal, we concluded that the trial court in *Dismuke* violated Rule 431(b) by giving the venirepersons "three different instructions about what they were supposed to do with their hands," and improperly substituting "difficulty or disagreement" for "understand and accept." (Internal quotation marks omitted.) *Id.* ¶¶ 53-55. We noted that, "[r]ather than make the procedure so

convoluted, it was necessary only to recite the principles and ask the potential jurors one question: whether they understood and accepted the principles." *Id.* ¶ 55.

¶ 22 Here, unlike in *Dismuke*, the trial court did not give confusing instructions about when the venirepersons were to raise their hands—as noted, the court made clear that they were to raise their hands if they did not both understand and accept the principle just recited. Nor did the court substitute any other words for "understand" and "accept." Rather, the court asked exactly what *Dismuke* advised: "whether [the veniremembers] understood and accepted the principles." *Id.*

¶ 23 Defendant further argues that the court violated Rule 431(b) by asking the veniremembers to raise their hands if they did *not* understand and accept the propositions, rather than posing a question seeking an affirmative response. As defendant acknowledges, however, responses to the Rule 431(b) questions need not be in the affirmative. *People v. Lilly*, 2018 IL App (3d) 150855, ¶ 15. In *Lilly*, we noted "[i]t would be imprudent to find error based solely upon the syntactical structure" of the court's questions. *Id.* For example, we noted that a court would comply with Rule 431(b) by asking, " 'does any member of the venire not understand and accept those principles?' " *Id.* Here, the court asked essentially the same question.

¶ 24 Lastly, we acknowledge that the court did not state for the record that no veniremember raised their hand when the court instructed the veniremembers to do so if they did not understand and accept that defendant was not required to prove his innocence or present any evidence. Defendant argues this violated Rule 431(b), but cites no authority to support his position. We do not believe the court's failure to record that no veniremember raised their hand constituted error. The court asked whether the venire understood and accepted the proposition, and instructed them to raise their hands if they did not. By doing so, the court asked a specific question regarding the

principle and gave the veniremembers *an opportunity* to respond, as the rule requires. Ill. S. Ct. R. 431(b) (eff. July 1, 2012) ("The court's method of inquiry shall provide each juror *an opportunity* to respond to specific questions concerning the principles set out in this section." (emphasis added)); see also *Thompson*, 238 Ill. 2d at 607 ("The rule requires *an opportunity* for a response from each prospective juror on their understanding and acceptance of those principles." (emphasis added)).

¶ 25    As the trial court complied with Rule 431(b), there has been no error. Accordingly, there can be no plain error. See *Thompson*, 238 Ill. 2d at 613 (first inquiry in plain-error review is whether error occurred). We therefore need not address defendant's argument that the evidence was closely balanced. See *Birge*, 2021 IL 125644, ¶ 42 (declining to address closely-balanced argument where no Rule 431(b) error occurred).

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.