# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Gonzalez, 2011 IL App (2d) 100380**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNESTO GONZALEZ, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0380 |
| Filed | December 7, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for aggravated assault of a peace officer and resisting a peace officer were reversed and the cause was remanded for a new trial where the trial court violated Supreme Court Rule 431(a) by denying defense counsel an opportunity to question prospective jurors directly during *voir dire,* notwithstanding the fact that defendant forfeited the issue by failing to raise it in his posttrial motion, since the trial court erred by failing to consider the factors set forth in Rule 431 before denying defense counsel to pose direct questions, especially when the case was not "exceedingly simple," and based on the closeness of the evidence, the error rose to the level of plain error by threatening to tip the scales of justice against defendant. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 08-CM-7493; the Hon. Charles D. Johnson, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Thomas A. Lilien and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | |
| | Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices McLaren and Bowman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Ernesto Gonzalez, appeals from his convictions of aggravated assault of a peace officer (720 ILCS 5/12-2(a)(6) (West 2008)) and resisting a peace officer (720 ILCS 5/31-1(a) (West 2008)). He contends that the trial court failed to comply with Illinois Supreme Court Rule 431(a) (eff. May 1, 2007) when it denied his counsel the opportunity to question prospective jurors directly during *voir dire*. For the following reasons, we reverse and remand for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was charged by information with aggravated assault of a peace officer, resisting a peace officer, and obstructing a peace officer (720 ILCS 5/31-1(a) (West 2008)). In December 2010, a jury trial was held.

¶ 4    Before trial, the court told the attorneys the following:

"Obviously you've both tried cases in front of me before. We're going to–the Court is going to do the vast majority of the questioning on voir dire. If you have any specific questions that you'd like me to ask, let me know. I'm going to limit your guys' contact with the jury not because I don't like you or anything, but just for the sake of being expeditious. Obviously then we will do strikes at the bench. If you have one for cause, let me know. If not, I'll ask about peremptories. No back-striking."

There were no objections. Later, the court told the potential jurors, "I and the attorneys are going to ask you some questions."

¶ 5    After some initial questioning by the court, the court asked the attorneys if they had any specific questions that they would like asked. Defense counsel gave the court some questions and the court agreed to ask them. The following colloquy then occurred:

"[Assistant State's Attorney]: Just so I understand, do you want–are we permitted to follow up?

-2-

THE COURT: No.

[Assistant State's Attorney]: Okay.

THE COURT: This is the new regime."

There were no objections. The trial court asked the venire the questions that defense counsel requested.

¶ 6 After additional questioning by the court, defense counsel moved to strike a prospective juror. The court denied the motion, and the following colloquy occurred:

"[Defense Counsel]: *** We would object–we're not allowed to make direct questions to the jury, is that correct?

THE COURT: Right.

[Defense Counsel]: All right. Over defense objection.

THE COURT: Okay."

¶ 7 The court later asked additional questions that defense counsel requested. In regard to another prospective juror, defense counsel moved to strike her for cause and, in arguing the motion, contended that the court asked leading questions that led the prospective juror to state that she felt that she could be fair, when she had previously indicated that she could not be fair. The court denied the motion to strike for cause, and defense counsel used a peremptory strike.

¶ 8 During the jury selection process, defense counsel used all available peremptory strikes. There were no specific objections as to how the questioning of the venire was handled.

¶ 9 At trial, Detective Andrew Ulloa testified that, while investigating a possible crime, he and other detectives went to an apartment where they were informed that a person in defendant's apartment might have purchased stolen goods. Ulloa spoke with defendant's girlfriend, Tasia Walls, who informed him that defendant was working across the street. Ulloa was not in uniform. He testified that he walked across the street, saw defendant walking toward him, and saw defendant quickly turn and walk away. Ulloa said that he shouted defendant's name from about 25 to 30 feet away and yelled "police, stop," but defendant walked faster.

¶ 10 Ulloa testified that he caught up with defendant and grabbed or tapped his shoulder and arm. According to Ulloa, defendant then turned and swung his fist at Ulloa and assumed a fighting stance. Ulloa and two other detectives tackled defendant to the ground. There was a scuffle, and it took the detectives about 30 seconds to handcuff defendant. Ulloa said that he then asked defendant why he did not cooperate, and defendant replied that he did not like the police and did not listen to anybody. Ulloa testified that defendant also stated that he would beat up the detectives the next time that he saw them. Another detective testified that, when asked why he did not cooperate, defendant responded with profanity, while a third and a fourth detective did not testify about what defendant said in response to the question.

¶ 11 After the State presented its case, the court granted defendant's motion for a directed verdict on the count of obstructing a peace officer.

¶ 12 Walls testified that from her apartment she saw the police running in the alley behind her building. She said that she saw Ulloa grab defendant's arms and handcuff him and that

defendant was just standing there while the cuffs were put on. Walls testified that Ulloa then punched defendant in the face, defendant fell to the ground, and two other officers began kicking him. Walls said that she took photographs of defendant after he returned from the police station. Those photographs depicted scratches on his hands, a swollen face, a black eye, and an injury to his forehead.

¶ 13    In rebuttal, Ulloa testified that four houses separated the apartment from the place of the arrest and that defendant was wearing a different shirt in the booking photographs than he was wearing in the photographs taken by Walls. Ulloa said that, to the best of his recollection, defendant did not have a black eye on the date of the arrest.

¶ 14    During deliberations, the jury submitted two notes to the court. In the first note, the jury asked what it should do if it agreed on a verdict for one charge but could not reach an agreement on the other charge. The jury was told to continue deliberations. In the second note, the jury asked the court to explain the law of reasonable doubt and requested a copy of the police report. The court sent back a note in which the jury was told that it had all of the law and evidence that it could consider. The jury returned guilty verdicts on both charges.

¶ 15    Defendant filed a motion for a new trial, which the trial court denied. Defendant was sentenced to 30 days in jail, one year of conditional discharge, a fine, and costs. Defendant timely appeals.

¶ 16                                    II. ANALYSIS

¶ 17    Defendant contends that the trial court violated Rule 431(a) when it denied his attorney the opportunity to question prospective jurors directly during *voir dire*. He acknowledges that he forfeited the issue by failing to raise it in his posttrial motion (*People v. Thompson*, 238 Ill. 2d 598, 611-12 (2010)), but asks that we review it under the doctrine of plain error.

¶ 18    Under Illinois's plain-error doctrine, a reviewing court may consider a forfeited claim when: "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "In plain-error review, the burden of persuasion rests with the defendant." *Thompson*, 238 Ill. 2d at 613.

¶ 19    Rule 431(a) provides:

"The court shall conduct *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate, touching upon their qualifications to serve as jurors in the case at trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges. Questions shall not directly or indirectly concern matters of law or instructions. The court shall acquaint prospective jurors with the general duties and responsibilities of jurors." Ill. S. Ct. R. 431(a) (eff. May 1, 2007).

To the extent that the construction of Rule 431 is at issue, we review the matter *de novo*. See *Thompson*, 238 Ill. 2d at 606. However, whether the trial court properly exercised its discretion under the rule is reviewed for an abuse of that discretion. See *People v. Allen*, 313 Ill. App. 3d 842, 848 (2000).

¶ 20 Our supreme court addressed Rule 431(a)'s requirements in *People v. Garstecki*, 234 Ill. 2d 430 (2009). In *Garstecki*, the defendant was charged with driving under the influence, and the trial court did not allow the attorneys to question the entire venire directly. The court initially asked what questions defense counsel wanted to pose to the venire and, after hearing them, informed counsel that the questions addressed areas that the court intended to cover in its own questioning. Defense counsel agreed with the court that the case was not complex. The court denied a defense motion to question the venire directly, but it allowed the attorneys to submit written questions for the court to ask. After questioning the venire, the court again denied a defense request to question the venire, but the court further questioned eight prospective jurors who had indicated a potential for bias. After the court completed its additional questioning, it allowed the attorneys to question those eight prospective jurors. *Garstecki*, 234 Ill. 2d at 432-34.

¶ 21 On appeal, the defendant contended that the trial court was required to allow direct questioning of the entire venire under Rule 431(a). *Garstecki*, 234 Ill. 2d at 434. Although the appellate court agreed with the defendant that Rule 431(a) required the trial court to allow the attorneys to question the entire venire directly, the appellate court held that the trial court's error was not so prejudicial as to warrant a new trial. *Garstecki*, 234 Ill. 2d at 434, 436.

¶ 22 Our supreme court allowed the defendant's petition for leave to appeal and affirmed the appellate court's judgment, but disagreed with its reasoning. *Garstecki*, 234 Ill. 2d at 437, 445. Our supreme court held that Rule 431(a) mandates that the trial court consider: (1) the length of examination by the court; (2) the complexity of the case; and (3) the nature of the charges. *Garstecki*, 234 Ill. 2d at 444. The trial court must then determine, based on those factors, whatever direct questioning by the attorneys would be appropriate. *Garstecki*, 234 Ill. 2d at 444. Trial courts may not simply dispense with attorney questioning whenever they want. *Garstecki*, 234 Ill. 2d at 444. Instead, " 'the trial court is to exercise its discretion in favor of permitting direct inquiry of jurors by attorneys.' " *Garstecki*, 234 Ill. 2d at 444 (quoting *Allen*, 313 Ill. App. 3d at 847). However, our supreme court also noted the limits of its decision, stating that it was not excluding the possibility that a trial court could properly determine, after considering the nature of the charge, the complexity of the case, and the length of the court's examination, that no attorney questioning would be necessary. *Garstecki*, 234 Ill. 2d at 444.

¶ 23 Our supreme court then decided that the trial court had complied with Rule 431(a), because it inquired about the questions that the attorneys wanted to ask, explained that those questions addressed areas that the court was already going to cover, and inquired whether the case would be complex. Defense counsel agreed that the case did not involve complex issues, and the trial was indeed "an exceedingly simple one," involving only the testimony of two officers about the traffic stop and arrest, with no issues concerning blood or breath testing. *Garstecki*, 234 Ill. 2d at 444. Further, the trial court allowed the attorneys to ask follow-up

questions directly of the eight prospective jurors of concern. Thus, the court did as the rule mandated–"it considered the appropriate factors and allowed whatever supplemental questioning it deemed appropriate for the case." *Garstecki*, 234 Ill. 2d at 445.

¶ 24 The facts in the instant case differ from those in *Garstecki*. Here, the trial court disallowed all direct questioning of any members of the venire, including any supplemental questioning by the attorneys. As noted, the supreme court in *Garstecki* did not rule out the possibility that a trial court could disallow direct questioning altogether after considering the factors enunciated in Rule 431(a)–the nature of the charges, the complexity of the case, and the length of the court's examination. *Garstecki*, 234 Ill. 2d at 444. But here, nothing in the record indicates that the court considered the factors in Rule 431(a) before denying the attorneys the opportunity to question the venire directly. Instead, before *voir dire* ever began, the court determined that it would not allow any direct questioning, and later it simply stated that there would be no direct supplemental questioning because this was a "new regime." Although the court initially mentioned a desire to be expeditious and allowed the attorneys to submit questions for the court to ask the venire, there was no discussion of the complexity of the case, the nature of the charges, or the length of the court's examination. Moreover, the instant case was not as "exceedingly simple" as was *Garstecki*. The upshot is that it appears from the record that the court simply decided that it would dispense with all direct attorney questioning without consideration of Rule 431(a), which is exactly what the court in *Garstecki* said was prohibited. See *Garstecki*, 234 Ill. 2d at 444 ("Trial courts may no longer simply dispense with attorney questioning whenever they want."). Thus, we determine that the court clearly erred. The next question, however, is whether that error is reversible under the plain-error doctrine.

¶ 25 In regard to the first prong of plain-error analysis, defendant argues that the evidence was so closely balanced that the error threatened to tip the scales of justice against him. In particular, he argues that, because the detectives were in plain clothes and arrived in unmarked vehicles, there was evidence that he did not know that they were police officers when they told him to stop and when Ulloa tapped or grabbed him on the shoulder. He also points to Walls' testimony that contradicted the detectives' testimony. Defendant further observes that the notes from the jury indicated that it was concerned about the quantum of evidence.

¶ 26 We agree with defendant that the evidence was closely balanced. A directed verdict in favor of the defense was granted on one charge after the close of the State's case. Walls then presented testimony that directly controverted that of the detectives. Thus, the credibility of the witnesses was critical. Furthermore, as defendant points out, the notes from the jury indicated that it had difficulty deciding the case. In particular, the jury inquired about the police report, indicating that it had questions about the detectives' testimony. On this record, we conclude that the evidence was closely balanced. See *People v. Naylor*, 229 Ill. 2d 584, 608 (2008) (holding that the evidence was closely balanced where the "evidence boiled down to the testimony of the two police officers against that of defendant"); *People v. Vesey*, 2011 IL App (3d) 090570, ¶ 17 (holding that the evidence was closely balanced where the defendant's guilt was decided by "who the jury found more credible" and there was no corroborating evidence).

¶ 27    Based on the closeness of the evidence, we hold that the error threatened to tip the scales of justice against defendant. The error could have hindered the parties' ability to probe the venire for evidence of bias. Indeed, during *voir dire*, defense counsel voiced concern that leading questions from the court affected a juror's answers to questions on that issue. In a close case, the prospect of a biased jury could easily affect the outcome. Accordingly, the error threatened to tip the scales of justice against defendant, and plain error occurred under the first prong of the plain-error doctrine. See *People v. Herron*, 215 Ill. 2d 167, 193 (2005) ("When there is error in a close case, we choose to err on the side of fairness, so as not to convict an innocent person."); *Vesey*, 2011 IL App (3d) 090570, ¶ 22 ("In addition, because the evidence in this case is closely balanced, any error committed by the trial court would be automatically prejudicial.").

¶ 28    Because defendant met his burden under the first prong, we need not address his argument under the second. However, because we are remanding the case for a new trial, we note that the State presented sufficient evidence to sustain defendant's convictions. Although the evidence was close, it was sufficient to allow a rational trier of fact to find defendant guilty beyond a reasonable doubt. Accordingly, double jeopardy does not bar a retrial. See *People v. Fillyaw*, 409 Ill. App. 3d 302, 316-17 (2011) (holding that a retrial was not barred on double jeopardy grounds where the evidence was sufficient, despite issues of witness credibility).

¶ 29                                   III. CONCLUSION

¶ 30    We determine that the trial court's failure to comply with Rule 431(a), denying defense counsel the opportunity to question the venire directly without first addressing the factors enunciated in the rule, rose to the level of plain error. Accordingly, we reverse and remand for a new trial.

¶ 31    Reversed and remanded.