**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200402-U

Order filed October 12, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0402 Circuit No. 19-CF-458 |
| REYNALDO J. GODINA, | ) ) ) | Honorable Cynthia M. Raccuglia, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The court did not abuse its discretion by admitting a witness's video recorded statement as substantive evidence. Any error by the court during *voir dire* does not warrant reversal because the evidence is not closely balanced.

¶ 2     Defendant, Reynaldo J. Godina, appeals his convictions for unlawful possession of a weapon by a felon (UPWF) and possession of a stolen firearm. Defendant argues the La Salle County circuit court erred by (1) admitting a witness's video recorded statement to the police as

substantive evidence, and (2) not allowing him to directly question the venire members during *voir dire*. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4         The State charged defendant with theft (720 ILCS 5/16-1(a)(1)(A) (West 2018)), UPWF (*id.* § 24-1.1(a)), and possession of a stolen firearm (*id.* § 24-3.8(a)). The theft charge alleged that the property defendant exerted unauthorized control over had a value in excess of $500. Prior to trial, defendant elected to proceed as a self-represented litigant.

¶ 5         Before starting *voir dire*, the court addressed defendant as follows: "Now, specifically, is there any questions that you want me to inquire? I do all the questioning. I don't allow you to do it but I cover pretty much everything. Is there any specific questions that you would like me to ask?" Defendant responded "No." During *voir dire*, only the court asked questions to the potential jury; defendant and the State did not. Defendant did not, at any time, attempt to ask any questions of the venire or request the court to ask any questions.

¶ 6         At trial, Salvador Godina testified that he was defendant's father. In August 2019, his grandchildren and their mother, Sarah Sluder, were living with him. Sluder was in a relationship with defendant. Defendant would be at Salvador's residence while Sluder and the children were present. By approximately August 24, Sluder no longer resided at Salvador's house. Around that same time, Salvador realized that his 12-gauge Remington shotgun, that he kept in his closet, was missing. Salvador made a police report. Later, he realized additional items were missing, including a battery for his truck, a welder, and a generator. When asked the value of the missing items and whether he paid over $500 for them, Salvador stated, "Probably it was a little over the $500, yes." The police recovered a shotgun, which Salvador indicated was his shotgun that had gone missing. Salvador did not give anyone permission to take any of the missing items.

2

¶ 7        Officer Matthew Klinefelter testified that he took a report from Salvador regarding a shotgun that was stolen and, later, additional items that were stolen. Salvador identified defendant as a potential suspect. Klinefelter continued his investigation at Terry Smith's residence on Zinc Street because that is where defendant had been staying. Klinefelter did not recover any of the missing items at that time. Klinefelter stated that Christopher Lopez told him that defendant had "mentioned the shotgun to him."

¶ 8        Sergeant Nicholas Bernal testified that, as part of the investigation into the items stolen from Salvador's residence, he listened to jail phone calls made by defendant. In the first call that Bernal listened to, the individual defendant was speaking with was supposed to pick up an item from Sluder at a residence on Zinc Street. Smith, defendant, and Sluder lived at the residence. Bernal listened to another call made by defendant to Sluder. That conversation indicated "that somebody was going to come to the house and pickup [*sic*] the item and it was only supposed to go to this person."

¶ 9        The recording of defendant's jail phone call with Sluder was admitted into evidence. At the beginning of the recording, an automated voice said, *inter alia*, "This call is subject to monitoring and recording. *** Please select from the following options if you consent to this call being recorded and to accept this call dial one now." After the call was accepted, defendant told Sluder that "all my everything is out in the garage," and if she planned on leaving "Terry's" she had to get all of his belongings. He then asked Sluder if she remembered "that thing" he had her "put up in the attic over there," and she said she did. Defendant then told her she needed to contact Juan and tell him to "get rid of" the item for defendant, and Sluder agreed. Defendant told Sluder, he was serious, to tell Juan "to get rid of" the item and that Juan would give defendant a couple

hundred dollars for it. Defendant told Sluder that Juan was the only one who should touch the item and if Juan took it, to tell him defendant "need[s] the loot for it."

¶ 10    Bernal testified that after he listened to the phone calls, he went to Smith's residence on Zinc Street. Smith signed a consent to search the property. The police searched the attic in the house and did not produce anything. When they searched the attic in the garage, they located a shotgun, which was later identified as belonging to Salvador. They also located a generator, a car battery, and a welder in the garage. Defendant was not present at the Zinc Street address when the police recovered the items.

¶ 11    Sluder testified that defendant was the father of her five children. In August 2019, she was staying at Smith's house on Zinc Street, and prior to that she stayed at Salvador's house. Sluder became aware of an investigation into Salvador's missing shotgun when the police came to the residence. She could not recall what date that was and stated she had a heroin addiction and could not recall anything from that time. The State asked if it "sound[ed] about right" that she went to the police department to speak to officers on August 26 and she agreed. When asked if it was early morning, Sluder stated she believed it was the middle of the night because the police "got [her] out of bed." She did not remember who she spoke to. Sluder stated she "just did a bag of dope before [she] went to sleep." The State asked if officers talked to her about a shotgun and the fact that they found a shotgun. She replied, "I guess that's why I was there, yeah." She also agreed that officers spoke to her about having listened to her conversation with defendant on a jail phone call. When asked what she told officers about the jail phone call, she stated she did not remember. The State asked, "Would the better recollection of the statement you made to the police be on the video at this point? You're saying you don't remember." She replied, "I don't. I really don't. I mean, they took my kids and my man all in the same night, you know what I mean? I did a bag of dope

4

and kept doing the dope and you know what I mean?" She acknowledged she made a statement to officers that was audio and video recorded. The State then asked if she told the officers that defendant was responsible for bringing the shotgun to Smith's house, and she responded, "Did I tell them that?" The State said it was asking her if she remembered. Sluder responded, "No, I don't. Why do you—I didn't even want to be here today cause I don't remember that."

¶ 12        The State told the court that "in light of *** the witness's recollection or lack of recollection, [it] would ask *** that [it] be given permission to play an edited version of her interview *** in order to impeach the damaging testimony that she's given here on the stand." Defendant objected because Sluder said "she was under the influence" and could not "remember any of it." The State responded that when a witness gives damaging testimony or otherwise inconsistent testimony it was entitled to impeach the witness with the statement. Further, Sluder testified she could not recall the events of that night, which gave the State the opportunity to play the recorded statement and have the jury consider it as evidence, not just for impeachment.

¶ 13        The court stated it was going to allow the recording to be played "because it is evidence impeachable and substantive that contradicts her testimony in open court." The court advised defendant that he could ask Sluder questions regarding whether she was intoxicated but it was a question of fact for the jury to determine her condition. The State noted there were four portions of Sluder's statement that were contained on the recording it was seeking to admit. It did not include Sluder's entire statement because it was lengthy and the State wanted to remove portions dealing with a "domestic issue." The court allowed defendant an opportunity to review the recording and make any further objections. Defendant reiterated that Sluder was intoxicated and that she had changed her story multiple times but stated, "I mean, if you want, they can watch it.

5

They'll be able to tell themselves she's pretty much under the influence." The court allowed the recording but advised defendant that he could argue those issues in closing argument.

¶ 14    On the recording, Sluder told officers that defendant brought the shotgun to Smith's house. Sluder stated that she helped defendant put the gun in the attic and then clarified that she made sure defendant did not fall when he put the gun in the attic.

¶ 15    On cross-examination, Sluder said, regarding her statement to police, that she "just wanted to get out of there. I was telling them anything just so they'd let me get out." She agreed with what the officers said because she wanted to leave. Sluder stated that she was "out of her mind," was on drugs, and "that's why [she] didn't even watch the video because [she did not] even remember any of that." On redirect, the State asked if Sluder remembered talking to defendant when he called her from jail, and she said she did not.

¶ 16    Lieutenant Michael Smudzinsky testified that he spoke with Sluder, and she acknowledged that "she participated in this stuff with [defendant]." Smudzinsky showed the recovered property to Salvador and Salvador identified it as his stolen property. The State admitted into evidence a certified copy of defendant's conviction for unlawful delivery of a controlled substance. Defendant did not testify or present any witnesses. The jury found defendant not guilty of theft and guilty of UPWF and possession of a stolen firearm.

¶ 17    After the trial, counsel was appointed to represent defendant. Counsel filed a motion for new trial, arguing, in part, the court erred (1) when it told defendant he did not have the right to directly question prospective jurors, which deprived defendant of the right to ensure he had a fair and impartial jury; (2) in allowing, over defendant's objection, the State to admit Sluder's recorded statement to police because it was not used for impeachment or to refresh the witness's memory; and (3) in allowing the statement to be used as substantive evidence because it did not contradict

6

Sluder's testimony, rather she stated she could not remember what she told the police. The court acknowledged it should not have told defendant he could not question the jury but that he did not seek to ask the jury any questions. Additionally, the court stated it was comprehensive in its questioning and provided defendant the opportunity outside the presence of the prospective jurors to object or tell the court anything defendant wanted to ask. The court determined it was harmless error and there was nothing indicating that it prejudiced defendant at trial. The court denied the motion in its entirety. After a sentencing hearing, defendant was sentenced to 6½ years' imprisonment. Defendant appeals.

¶ 18                                    II. ANALYSIS

¶ 19        On appeal, defendant argues (1) the court abused its discretion in admitting Sluder's statement to the police as substantive evidence because the State failed to refresh Sluder's recollection and Sluder was not properly impeached as her testimony did not damage the State's case, and (2) the court erred by telling him that he could not directly question jurors during *voir dire*. We consider each argument in turn.

¶ 20                        A. Sluder's Statement to the Police

¶ 21        Section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) provides that:

> "In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if
>
>> (a) the statement is inconsistent with his testimony at the hearing or trial, and
>>
>> (b) the witness is subject to cross-examination concerning the statement, and
>>
>> (c) the statement—

7

\*\*\*

(2) narrates, describes, or explains an event or condition of which

the witness had personal knowledge, and

\*\*\*

(C) the statement is proved to have been accurately

recorded by a tape recorder, videotape recording, or any

other similar electronic means of sound recording."

725 ILCS 5/115-10.1 (West 2018).

The purpose of this section is to protect parties when a witness, "while on the stand at trial, disown[s] a prior statement by testifying differently or profess[es] inability to remember the subject matter." *People v. Brothers*, 2015 IL App (4th) 130644, ¶ 65. "A witness' prior testimony, however, does not have to directly contradict testimony given at trial to be considered inconsistent within the meaning of that term set out in section 115-10.1." *People v. Flores*, 128 Ill. 2d 66, 87 (1989). "Where a witness claims that he cannot recall a matter at trial, a former affirmation of it should be admitted as a contradiction." *People v. Leonard*, 391 Ill. App. 3d 926, 933 (2009).

"Whether a prior statement is inconsistent under section 115-10.1 of the Code and, therefore, admissible as substantive evidence, falls within the sound discretion of the trial court and the decision will be reversed on appeal only if it constitutes an abuse of discretion. [Citations.] An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view." *People v. Sangster*, 2014 IL App (1st) 113457, ¶ 59.

¶ 22 Although defendant focuses his argument on showing that the State failed to establish that Sluder's testimony damaged its case such that it did not properly use her recorded statement as

8

impeachment, the same type of damage is not required for the State to properly admit the recorded statement as substantive evidence under section 115-10.1 of the Code. See 725 ILCS 5/115-10.1 (West 2018). Initially, we note that defendant does not argue that the requirements set forth in section 115-10.1 of the Code were not met. Nevertheless, our review indicates that those requirements were met.

¶ 23 Regarding the inconsistency requirement, in *Flores*, 128 Ill. 2d at 87, the defendant argued that a witness's testimony that he could not remember what he testified to before the grand jury was not inconsistent—within the meaning of the term as used in section 115-10.1 of the Code—with his grand jury testimony. The supreme court disagreed, stating "[w]e consider that the trial court's decision that Ramos' professed memory loss as to statements he made before the grand jury was inconsistent with his previous testimony was not an abuse of discretion." *Id.* at 88. Thus, pursuant to *Flores*, Sluder's statement that she generally could not remember what she had told the police or specifically that she could not recall telling them defendant was responsible for bringing the shotgun to Smith's house, was inconsistent with her statement to the police. Sluder was subject to cross-examination on her statement and defendant cross-examined her. Her statement described an event—helping defendant put the shotgun in the attic—which she had personal knowledge of. Moreover, there is no indication that the statement was not accurately video and audio recorded, and the record shows defendant was given a copy of the recording in discovery. Therefore, Sluder's statement was admissible as substantive evidence, and the court did not abuse its discretion by admitting it as such. Because we conclude Sluder's statement was admissible as substantive evidence, we need not consider if it was also admissible as impeachment evidence.

¶ 24 B. *Voir Dire*

9

¶ 25    Defendant next argues that the court erred by telling him that he could not directly question jurors during *voir dire*. He acknowledges that he forfeited this issue by failing to object during *voir dire*. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, he argues the error warrants reversal under the plain error doctrine because the evidence is closely balanced. The State concedes that the court erred but argues the evidence is not closely balanced.

¶ 26    The plain error doctrine allows a forfeited error to be reviewed when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant." *People v. Belknap*, 2014 IL 117094, ¶ 48. Generally, the first step in applying the plain error doctrine is to determine whether a clear or obvious error occurred. *People v. Sebby*, 2017 IL 119445, ¶ 49. However, "[w]here the only basis proffered for plain-error review is a claim that the evidence is closely balanced" the reviewing court may bypass the error determination when the closely balanced analysis is dispositive. *People v. White*, 2011 IL 109689, ¶ 148.

¶ 27    Regardless of any error by the court (see, *e.g.*, *People v. Gonzalez*, 2011 IL App (2d) 100380, ¶ 24 (noting that the court cannot dispense with all direct questioning of the venire members without consideration of the proper factors)), the evidence in this matter is not closely balanced. To convict defendant of UPWF, the State needed to prove that defendant possessed a firearm and had been previously convicted of a felony. See 720 ILCS 5/24-1.1(a) (West 2018). To convict defendant of possession of a stolen firearm, the State needed to prove defendant possessed a firearm that he was not entitled to possess and knew it was stolen. See *id.* § 24-3.8(a).

¶ 28    Here, defendant was recorded telling Sluder to retrieve an item they placed in the attic of Smith's residence. Defendant and Sluder were made aware that they were being recorded before the call was accepted. Based on this, officers executed a consensual search of Smith's garage attic

10

and located a shotgun. Salvador identified the shotgun as his and testified that no one had permission to take it. Sluder, in her recorded statement, admitted that defendant brought the shotgun to Smith's residence, and she helped him put it in the attic. The State admitted defendant's prior felony conviction into evidence. Defendant presented no evidence. This evidence readily established defendant's guilt of UPWF and possession of a stolen firearm.

¶ 29    In coming to this conclusion, we reject defendant's argument that the fact that the jury acquitted him on the theft charge shows that the evidence was closely balanced. Although the finding in favor of a defendant on some charges and not on others could arguably indicate the evidence is closely balanced in some instances, this is not the case here. Specifically, as charged, the State needed to prove that the value of the items defendant reportedly took from Salvador exceeded $500. The evidence the State provided of the value was a statement by Salvador that the property was "[p]robably *** a little over the $500." The State provided no evidence as to how much the items cost or what condition they were in. Thus, the sole evidence of the purported value was an equivocal statement. In contrast, the evidence regarding the UPWF and possession of a stolen firearm charges was substantial and uncontradicted. Therefore, the fact that defendant was acquitted of theft but convicted of UPWF and possession of a stolen firearm does not indicate the evidence was closely balanced.

¶ 30                           III. CONCLUSION

¶ 31    The judgment of the circuit court of La Salle County is affirmed.

¶ 32    Affirmed.