2024 IL App (4th) 240218

NO. 4-24-0218

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 26, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| SARA L. VINCENT, | ) | No. 24CF33 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Terence M. Patton, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Zenoff and Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Sara L. Vincent, appeals the trial court's order denying her pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).

¶ 2        Defendant argues on appeal that the trial court lacked authority to deny her pretrial release because (1) the State did not charge her with a detainable offense and (2) pretrial release could not be revoked pursuant to section 110-6(a) of the Code (725 ILCS 5/110-6(a) (West 2022))—the ground asserted by the State in its petition to detain—because she had not been released on any of the charges in the present case, Henry County case No. 24-CF-33. Alternatively, defendant asserts that the court abused its discretion when it granted the State's petition to detain because the State failed to meet its burden of proof that no condition or combination of conditions

of pretrial release could mitigate any concerns posed by defendant's release. We affirm the trial court's decision.

¶ 3                                                    I. BACKGROUND

¶ 4                                                    A. The Charges

¶ 5            On February 2, 2024, the State charged defendant in a two-count information with aggravated battery to a peace officer (720 ILCS 5/12-3.05(d)(4) (West 2022)) and obstructing a peace officer (*id.* § 31-1(a)(2)). On that same day, the State filed a petition to deny defendant's pretrial release using a preprinted form with boxes designated for the various grounds for pretrial release. The State checked only one box, which alleged the following ground for pretrial detention: "Defendant is on Pretrial Release in case number 2024CM10, a felony or Class A misdemeanor and defendant is charged with a felony or a Class A offense that was committed while the defendant was on Pretrial Release in the instant offense; *See:* 725 ILCS 5/110-6(a)."

¶ 6            For its factual basis, the State asserted the following in its petition:

                "02/02/2024 deputies dispatched to IL Hwy. 81 between Cambridge and
                Andover for person walking on highway. Subject ID'd as Sara Vincent. Vincent
                [would not] stop walking on the roadway and crossing the lanes of traffic when
                ordered by the deputies. Placed under arrest. Vincent had items wrapped around the
                handcuffs. Sgt. Hendrick removed her cuffs to unwrap the items. Vincent bit him
                on the leg above his knee resulting in bite marks."

¶ 7                                                    B. The Detention Hearing

¶ 8            On February 5, 2024, the trial court conducted a detention hearing.

¶ 9            Before the detention hearing, the trial court admonished defendant of the charges and advised her of her rights. The following exchange occurred:

"[THE COURT]: You have the right to be represented by an attorney, and if you can't afford an attorney, one is appointed for you.

Can you afford to hire your own attorney?

THE DEFENDANT: No. I'm not willing to pay an attorney for anything. I have no—I can speak for myself.

THE COURT: So are you—are you asking for a public defender? Or are you wanting to waive your right to an attorney and represent yourself?

THE DEFENDANT: I don't want to waive my right to it, because if I do need some assistance to deal with the legal terms that I haven't studied yet—

THE COURT: Sure.

THE DEFENDANT:—then yeah.

THE COURT: Okay. You represent her on the misdemeanor; is that—

[DEFENSE COUNSEL]: I do, Your Honor.

THE COURT:—correct? That 24-CM-10?

All right. I will appoint public defender to represent you."

¶ 10    The trial court then proceeded to the detention hearing:

"[THE COURT]: Okay. [Defense counsel], have you received a copy of the State's Verified Petition to Deny Pretrial Release?

[DEFENSE COUNSEL]: I have, Your Honor.

THE COURT: Have you had the opportunity to confer with your client?

[DEFENSE COUNSEL]: I have, Your Honor.

THE COURT: Are you ready to proceed today?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: Okay. [State], you may present your evidence or proffer.”

¶ 11    The State requested the trial court to take judicial notice of the pretrial investigation report (PTI), which the court granted. The PTI contained only defendant's criminal history because she declined to be interviewed. The PTI showed that defendant was on probation for aggravated battery to a peace officer, possession of methamphetamine, and obstructing justice. Defendant was also on pretrial release for aggravated assault with a deadly weapon, a Class A misdemeanor. Defense counsel proffered that “my client has stated that if she were to be released, she would go to her parents' house here in Cambridge, and that's the proffer that I have at this time.”

¶ 12    The State then made the following argument:

“As the Court has already put forth, she is on probation at this current time for a similar offense. She is on pretrial release for 24-CM-10 for aggravated assault with a deadly weapon.

I don't believe there is a series of conditions that will prevent [defendant] from accruing further cases, and there is a—she's charged in at least two situations here with two separate victims.

So, it's the State's position that pretrial release should be denied at this point in time.”

¶ 13    In response, defense counsel asserted the following:

“Your Honor, again, the State has to show three things here, that the—that she committed these offenses, basically a clear and convincing standard; number two is that she is a danger to any person or persons in the community; but in the third one that I want to talk about here, which is that no condition or combinations of conditions that can prevent this from happening again, [defendant] is saying

- 4 -

she's willing to wear an ankle bracelet which would help give the Court some assurances of where she is and give the pretrial services officer an ability to keep track of her to some degree, as well as she's willing to live at her parents' house here in Cambridge. Again, with her parents around her, it would give her a little bit more structure and give her the ability to deal with any issues and not have an occurrence like this happen again.

So, we don't believe the State has met the burden in its petition."

¶ 14 The trial court granted the State's motion to detain defendant, explaining—along with some discussion with defendant—its reasoning as follows:

"So, she's on probation for ag battery to a peace officer, obstructing justice. She's got a pending charge for ag assault with a deadly weapon, a knife. *** She's on pretrial release on that.

THE DEFENDANT: It wasn't a deadly weapon. It was a simple steak knife.

THE COURT: Okay. She's on pretrial release for that ag assault.

Then she's walking down the highway, cops find her, try to get her off the highway, and she resists that arrest and bites an officer. So, another aggravated battery to a peace officer.

So, I find the proof is evident or the presumption great that she committed the offense as listed, ag battery to a peace officer. I find that she poses a real and present threat to the safety of person or community, because these acts of violence or threats keep happening.

So, the question is[:] is there a condition or combination of conditions that can mitigate the real and present threat. [Defense counsel] has proposed an ankle bracelet.

THE DEFENDANT: I don't think it's necessary. I'm not going to run on charges like these, because I am going the fight them because I didn't do anything wrong. I didn't assault him with a weapon at all.

[DEFENSE COUNSEL]: Ma'am [(defendant)], please don't say anything more at this point.

THE COURT: The ankle monitor lets you monitor where they're going, but it's not going to stop her from having contact with other people in the community, officers and other citizens, and an ankle monitor isn't going to stop her from making threats or battering other people. I don't think this is the type of danger that an ankle monitor can mitigate.

So, I find that there is no condition or combination of conditions that can mitigate the real and present threat.

So, the State's petition is granted. The defendant is denied pretrial release."

¶ 15 The trial court entered a written detention order, in which it found that (1) "[t]he charged offense/circumstance is eligible for detention" and (2) clear and convincing evidence existed to meet the dangerous standard contained in section 110-6.1(a)(1)-(6) of the Code (725 ILCS 5/110-6.1(a)(1)-(6) (West 2022)). The court further found that less restrictive conditions would not assure the safety of the community because defendant was "on probation for aggravated battery/peace officer, on pretrial release for aggravated assault in 24CM10, acts/threats of violence keep occurring." The court concluded that pretrial release should be denied because an "ankle

monitor wouldn't stop her from making threats or battering others."

¶ 16                                         C. The Appellate Proceedings

¶ 17          In February 2024, defendant filed a notice of appeal utilizing the notice of appeal form in the Article VI Forms Appendix to the Illinois Supreme Court Rules. See Ill. S. Ct. Rs. Art. VI Forms Appendix R. 606(d). In her notice of appeal, defendant argued only that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions of release could mitigate the threat posed by defendant's release. Specifically, defendant asserted the following:

> "The State could not articulate specific facts that make the defendant non-compliant with any condition the court could impose. [Defendant] has the ability to live with her parents, who could assist her with making sure she complied with the terms of pre-trial release. She was also willing to agree to wear an ankle bracelet to make sure she is in compliance."

¶ 18          The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal, and in March 2024, OSAD filed, on defendant's behalf, a memorandum in support of the appeal, arguing that (1) defendant did not commit a detainable offense and (2) the State failed to prove that no conditions of release would mitigate the threat.

¶ 19          In April 2024, this court affirmed the trial court's decision, concluding the trial court did not abuse its discretion by granting the State's petition for pretrial detention. *People v. Vincent*, No. 4-24-0218 (Apr. 18, 2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 20          Defendant filed a petition for leave to appeal to the Illinois Supreme Court. In June 2024, the supreme court entered a supervisory order denying the petition for leave to appeal but

instructing this court to vacate its prior decision and issue a decision pursuant to Illinois Supreme Court Rule 23(a), (b) (eff. Feb. 1, 2023). *People v. Vincent*, No. 130673 (Ill. June 27, 2024) (supervisory order).

¶ 21 In August 2024, this court vacated its prior decision, and we now affirm for the following reasons.

¶ 22 II. ANALYSIS

¶ 23 Defendant argues on appeal that the trial court lacked authority to deny her pretrial release because (1) the State did not charge her with a detainable offense and (2) pretrial release could not be revoked pursuant to section 110-6(a) of the Code—the ground asserted by the State in its petition to detain—because she had not been released on any of the charges in the present case, No. 24-CF-33. Alternatively, defendant asserts that the court abused its discretion when it granted the State's petition to detain because the State failed to meet its burden of proof that no condition or combination of conditions of pretrial release could mitigate any concerns posed by defendant's release. We affirm the trial court's decision.

¶ 24 As an initial matter, defendant concedes that she forfeited her claims that (1) the State did not charge her with a detainable offense and (2) pretrial release could not be revoked pursuant to section 110-6(a) of the Code. See *In re M.P.*, 2020 IL App (4th) 190814, ¶ 44 ("A defendant forfeits an issue for purposes of appellate review by failing to object to the alleged error or raise it in a written posttrial motion."). Nonetheless, she contends that we may review her claims of error as either second-prong plain error or ineffective assistance of counsel. We address each claim in turn.

¶ 25 A. Defendant's Forfeited Arguments

¶ 26 In her memorandum, defendant argues as follows:

"While the trial court may have been authorized under section 110-6(a) to revoke [defendant's] pretrial release in 202[4] CM 10 based on the allegation of new charges, the trial court did not have the authority to deny [defendant] pretrial release in the instant case because the charged aggravated battery of a peace officer offense is not a detainable offense. As a result, this Court should vacate the trial court's detention order."

¶ 27                              1. *Second-Prong Plain Error*

¶ 28         Defendant does not argue that the evidence was closely balanced. Instead, she claims that the trial court's ordering her pretrial detention when she had not been charged with a detainable offense rises to the level of structural error. We emphatically disagree.

¶ 29                              a. The Applicable Law

¶ 30         The First District recently explained second-prong plain error in *People v. Jones*, 2024 IL App (1st) 221555, ¶ 69, in which it wrote the following:

>        " 'Error under the second prong of plain error analysis has been equated with structural error, meaning that automatic reversal is only required where an error is deemed to be a systemic error that serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." ' *People v. Cosmano*, 2011 IL App (1st) 101196, ¶ 78 (quoting [*People v.*] *Glasper*, 234 Ill. 2d [167,] 197-98 [(2009)]). 'In other words, "[a]n error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." ' *Id.* (quoting *People v. Thompson*, 238 Ill. 2d 598, 609 (2010)). 'Structural errors have been recognized in only a limited class of cases including: a complete denial of counsel; trial before a biased judge;

racial discrimination in the selection of a grand jury; denial of self-representation at trial; denial of a public trial; and a defective reasonable doubt instruction.' *Id.* (citing *Thompson*, 238 Ill. 2d at 609)."

¶ 31                                    b. This Case

¶ 32        Although the usual first step in a plain error analysis is to determine whether there was any error at all, we need not do so here because we conclude that any alleged error in the detention proceedings does not rise to the level of structural error.

¶ 33        Both the Illinois Supreme Court and the United States Supreme Court have found structural error only in a very narrow and extreme set of circumstances. *Thompson*, 238 Ill. 2d at 609; *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006). And for good reason: structural error requires automatic reversal. When a defendant is completely denied counsel or the ability to proceed *pro se* at trial, that defendant has been deprived of a meaningful chance to defend herself in whichever way she sees fit. See *Jones*, 2024 IL App (1st) 221555, ¶ 69. Similarly, a nonpublic trial, a proceeding before biased judge, racial discrimination in the selection of a grand jury, or a defective reasonable doubt instruction all cast doubt on the legitimacy of the proceedings and render the proceedings fundamentally unfair. *Id.* In these situations, prejudice is presumed because of the magnitude of the error and its possible effect on the defendant's case.

¶ 34        Defendant claims that her pretrial detention, despite not being charged with a detainable offense as required by statute, amounts to structural error because it affects her fundamental liberty interest. Defendant's position is clearly untenable because by that logic, every error in a criminal trial could be said to affect a defendant's fundamental right to liberty. Further, for the following reasons, the very nature of proceedings under the Act makes a colorable claim of structural error nearly impossible to assert.

¶ 35 The Code requires a trial court to revisit a defendant's pretrial detention or conditions of pretrial release each time a defendant appears in court (725 ILCS 5/110-5(f-5), 110-6(j), 110-6.1(i-5) (West 2022)), giving her and the court multiple opportunities to correct any errors regarding her detention or address new issues pertaining thereto. Experience shows that defendants charged with felony offenses typically appear in court once every 45 to 60 days; that means every 45 to 65 days, a defendant will get to revisit her pretrial detention and raise questions with the court concerning her detention.

¶ 36 This timetable for additional judicial scrutiny is much faster than the appeals process involving routine appeals from criminal convictions. Further, structural error is significantly less likely to arise in proceedings under the Act because, unlike the usual appeals process, defendants are required to file a motion for relief in the trial court as a precondition to appellate review. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 37 Defendant cites this court's decision in *People v. Gatlin*, 2024 IL App (4th) 231199, ¶¶ 15, 22-23, as support for her second-prong plain error claim. However, *Gatlin* is easily distinguishable and serves only to demonstrate the exceedingly limited circumstances in which a reviewing court will even entertain granting relief under the second prong.

¶ 38 In *Gatlin*, the defendant was completely denied the ability to participate in the pretrial detention proceedings because he (1) was not personally present, (2) could not hear what was being said in the courtroom, and (3) could not communicate with the trial court for the majority of the hearing because his microphone was muted. *Id.* Because he was unable to hear or participate in criminal proceedings to determine whether he was eligible for pretrial release, we concluded that he was denied his right to be heard—a cornerstone of all due process rights—and ordered the detention order vacated and remanded for further proceedings in compliance with the Act. *Id.*

¶ 39 As *Gatlin* shows, structural errors will be found in pretrial detention cases, like all criminal cases, only when the error is so egregious that it renders the proceedings fundamentally unfair or erodes the integrity of the judicial process, such as the complete deprivation of a core constitutional right.

¶ 40 By contrast, in this case, defendant was personally present and was able to speak to the trial court throughout the proceedings. The court ensured that defendant was advised of her right to proceed with or without counsel and made sure defendant wished to be represented by counsel before appointing a public defender. Moreover, the court appointed as defendant's counsel the same attorney who was representing defendant in her misdemeanor case, and the court confirmed on the record that counsel (1) had received the State's petition to detain, (2) had an adequate opportunity to confer with defendant, and (3) was ready to proceed with a hearing on the petition.

¶ 41 Accordingly, we conclude that the alleged error falls far short of constituting a structural error.

¶ 42 2. *Ineffective Assistance of Counsel*

¶ 43 Assuming her plain error argument fails, defendant argues in the alternative that her counsel rendered ineffective assistance by failing to (1) argue in the trial court that defendant was not charged with a detainable offense or (2) raise the same claim in her notice of appeal as a basis for reversal. We disagree.

¶ 44 a. The Applicable Law

¶ 45 "To demonstrate ineffective assistance of counsel, a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient

performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability is a probability which undermines confidence in the outcome of the trial." *People v. Sturgeon*, 2019 IL App (4th) 170035 ¶ 84. "Because the defendant must satisfy both prongs of this test, the failure to establish either is fatal to the claim." *Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland*, 466 U.S. at 697). To succeed on a claim of ineffective assistance of counsel, defendant must overcome the strong presumption that counsel's actions were the result of trial strategy. *Sturgeon*, 2019 IL App (4th) 170035, ¶ 83. "When a claim of ineffective assistance of counsel was not raised at the trial court, this court's review is *de novo*." *Id.* ¶ 85.

¶ 46                                  b. This Case

¶ 47                                  i. *Prejudice*

¶ 48            At the detention hearing, the trial court confirmed with defense counsel that he currently represented defendant in the pending misdemeanor case for which defendant was on pretrial release. Given the context that (1) the State sought to detain defendant on the grounds that she committed a felony offense while on pretrial release in case No. 24-CM-10, and the State cited section 110-6(a) in its petition, (2) counsel was already representing defendant in that misdemeanor case, and (3) section 110-6(a) permits a court, on its own motion, to move to revoke pretrial release when a defendant has committed a subsequent felony, counsel likely recognized that any objection to the technical defects in the proceedings would ultimately be futile because the trial court could have corrected them immediately simply by calling case No. 24-CM-10 for a hearing *instanter*. Because (1) defendant concedes that she was detainable pursuant to section 110-6(a) of the Code and (2) the Code authorized the trial court to move to revoke pretrial release and conduct a hearing on the same on its own motion (725 ILCS 5/110-6(a) (West 2022)), defendant

cannot establish any prejudice from the technical defect she has identified.

¶ 49                                     ii. *Trial Strategy*

¶ 50        Because we have determined that no prejudice could result, we need not address whether counsel performed deficiently. However, we offer the following observations, which provide additional support for our conclusion that counsel did not render ineffective assistance. Indeed, the record shows that counsel likely did not object to the State's petition as a matter of strategy. Had counsel raised the objection now raised on appeal, the State likely would have corrected the procedural error by simply restyling its petition to detain in the felony case as a petition to revoke pretrial release in the misdemeanor case, which appears to be the substance of the State's and defense counsel's arguments and the trial court's reasoning for detention. Indeed, the State never argued—either in its written motion or at the detention hearing—that defendant had committed an independently detainable offense; it very clearly sought to detain defendant only on the ground that she committed a felony offense while on pretrial release.

¶ 51        We note that at a revocation hearing, the State must prove, "by clear and convincing evidence, that no condition or combination of conditions of release would reasonably *** prevent the defendant from being charged with a subsequent felony or Class A misdemeanor" (*id.*), which is what both the State and defense counsel actually argued at the hearing, suggesting that counsel understood that the State's petition for detention was more appropriately characterized as a petition for revocation. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002) (reaffirming the well-settled rule that the substance of a motion's content controls over its title when determining its nature). In this situation, defendant asks this court to elevate form over substance by assuming that the State (1) was not seeking a revocation and (2) could not have easily (a) restyled its petition as one to revoke pretrial release rather than deny it and (b) refiled the

petition under the 24-CM-10 case number instead of in the new felony case. We decline to do so.

¶ 52 We emphasize that the State's petition upon which the February 2024 detention hearing was conducted alleged as the basis for defendant's detention only that defendant was "on Pretrial Release in case number 2024CM10, a felony or Class A misdemeanor and defendant is charged with a felony or a Class A offense that was committed while the defendant was on Pretrial Release in the instant offense; *See:* 725 ILCS 5/110-6(a)." OSAD concedes on appeal that the trial court "may have been authorized under [that] section" to revoke defendant's pretrial release but argues on appeal the trial court could not deny defendant pretrial release because the charged offense of aggravated battery of a peace officer was not a detainable offense. *Supra* ¶ 26.

¶ 53 Defendant essentially argues that counsel was ineffective for failing to challenge the State's petition to detain on a ground the State never asserted. However, in our view, counsel quite likely did not object to the State's petition because counsel recognized that defendant was detainable pursuant to section 110-6(a), as OSAD concedes on appeal. Accordingly, defendant's counsel's performance during the hearing cannot be viewed as falling "below an objective standard of reasonableness" when the State was not proceeding on the grounds defendant contends on appeal were improper.

¶ 54 Accordingly, we conclude that defendant did not receive ineffective assistance of counsel.

¶ 55 B. Conditions of Release

¶ 56 Having concluded that defendant's other arguments fail, we last address whether the trial court abused its discretion by concluding that defendant be detained.

¶ 57 1. *The Applicable Law*

¶ 58 Section 110-2(a) of the Code (725 ILCS 5/110-2(a) (West 2022)) provides that all

criminal defendants are presumed eligible for pretrial release. A defendant may be denied release only if, upon verified petition, the State proves by clear and convincing evidence at a detention hearing that, in pertinent part, (1) the proof is evident or the presumption great the defendant committed a detainable offense, (2) the defendant poses a threat to the safety of the community or any person in the community, and (3) no combination of conditions can mitigate the threat to the safety of the community. *Id.* § 110-6.1(a), (e)(1)-(3). We review a trial court's ruling denying a defendant pretrial release for an abuse of discretion. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 13. "An abuse of discretion occurs when the [trial] court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [trial] court." (Internal quotation marks omitted.) *Id.*

¶ 59                                    2. *This Case*

¶ 60            Before the trial court, defense counsel addressed only whether appropriate conditions could mitigate any threat posed by defendant's pretrial release, implicitly conceding (or at least indicating to the trial court) that the State had demonstrated (1) the proof was evident or presumption great that defendant committed a detainable offense and (2) defendant posed a threat to the safety of the community. In her notice of appeal and memorandum in support thereof, defendant contends that the State failed to present any evidence about the inadequacy of pretrial conditions. Further, defendant claims that the court's ruling that no set of conditions could mitigate the risk defendant posed was an abuse of discretion because she was willing to wear a GPS monitoring device and would be living with her parents, who would give her structure and stability. We disagree.

¶ 61            Here, the record demonstrates that the trial court considered all available pretrial conditions when addressing the State's petition to deny pretrial release. The State's petition was

premised solely on defendant's committing the felony offenses charged in case No. 24-CF-33 while she was on pretrial release for a Class A misdemeanor in case No. 24-CM-10, namely, aggravated assault with a deadly weapon. See *id.* ¶ 40 (rejecting defendant's argument that State failed to meet its burden of proof on conditions of release where the State's "central argument against the sufficiency of conditions was defendant's past misconduct" while on probation). "This is a highly relevant concern, as a defendant's release on conditions depends on the court having confidence that the defendant will *comply* with those conditions." (Emphasis in original.) *Id.*

¶ 62        The cases cited by defendant are distinguishable because the trial court in the present case, unlike those other cases, explicitly considered and rejected the conditions of release that defendant claims would have been sufficient. See *id.* ¶¶ 41-42 (distinguishing cases that reversed a pretrial detention order for a trial court's failure to address pretrial release conditions and holding that a trial court is presumed to have considered conditions of release when (1) the parties addressed conditions in their arguments and (2) the court gave a specific rationale for its finding).

¶ 63        Contrary to defendant's claims, we are not convinced that trial court erred by concluding that her living with her parents and wearing an ankle monitor would not decrease the risks she posed to the community, including to law enforcement. As the court noted, defendant had a history of resisting arrest and battering police officers. Although an ankle monitor would allow the authorities to know where defendant was at any given time, it would not stop her from leaving a residence, as she did in this case, which might then require police intervention. Similarly, the court could have reasonably concluded that defendant might pose a threat to her parents, which would also require police intervention. Ultimately, defendant's recent and persistent history of battering police officers when they attempted to stop her illegal and potentially dangerous conduct

- 17 -

simply could not be mitigated if she were released. Accordingly, we conclude that (1) the State met its burden of proof and (2) the trial court appropriately exercised its discretion to deny defendant pretrial release.

¶ 64                                    III. CONCLUSION

¶ 65          For the reasons stated, we affirm the trial court's judgment.

¶ 66          Affirmed.

*People v. Vincent*, 2024 IL App (4th) 240218

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Henry County, No. 24-CF-33; the Hon. Terence M. Patton, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Cristina Law Merriman, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |