2026 IL App (1st) 252526-U

FIRST DIVISION
March 3, 2026

No. 1-25-2526B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit |
| | ) Court of Cook County. |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 25 CR 11212 |
| | ) |
| JELAVONNI GAGE, | ) |
| | ) Honorable James Obbish, |
| Defendant-Appellant. | ) Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1     *Held*: We affirm the trial court's order granting the State's petition for pretrial detention. The State proved by clear and convincing evidence that defendant committed a detainable offense, poses a real and present threat to a person or the community, and no conditions of pretrial release could mitigate the threat posed.

¶ 2     Defendant Jelavonni Gage was arrested and charged with attempted first-degree murder and aggravated battery with a deadly weapon after she allegedly shot her friend in the stomach following a dispute about their living situation. At the time of the shooting, defendant was already on pretrial release for an unrelated domestic battery case. The State asked the circuit court to order her detention until trial on the new attempted murder case and also filed a petition to revoke her pretrial release on the domestic battery case based on this new offense. Following a

hearing, the trial court granted the State's petition and ordered defendant to be detained pending trial. Defendant filed a petition for relief which was denied. Defendant now appeals the pretrial detention order. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4     The following facts were proffered by the State at the pretrial detention hearing. Defendant Jelavonni Gage and the victim became friends after meeting at a domestic violence shelter. They had been friends for about three years, and the victim was living at defendant's residence. The victim had four children living in the residence with her and defendant's two children were living there as well.

¶ 5     On September 3, 2025, the victim's cousin was visiting. At approximately 6 a.m., defendant went into the victim's room to wake her. Defendant told the victim to do the dishes, but the victim replied that she would do them later because one of the children had a doctor's appointment. Defendant became upset and began slamming doors and making insulting and hurtful remarks about the victim. Defendant removed a black pistol from her pocket and placed it on the living room table. Defendant threatened to shoot the victim in front of her children. The victim told defendant that she and her children were going to move out of defendant's residence that day.

¶ 6     The victim began to pack her belongings to move out. Defendant called the police and stated that the victim needed to be escorted from the residence. Defendant then approached the victim and bumped her with her chest. The victim pushed defendant away, and defendant threw a punch, and a physical altercation ensued. Defendant ripped the braids from the victim's head. Both women fell to the floor. The victim's cousin helped the victim up from the floor and when

they turned around, defendant was standing there with the pistol in her hand. The victim and her cousin both pleaded with defendant not to shoot, but defendant shot the victim in the abdomen.

¶ 7    Defendant gathered her two children and left the residence to take her children to the school bus. The victim's cousin called 911. Defendant also called the police for a second time after the shooting. The firearm used to shoot the victim was never recovered, and defendant did not render aid to the victim following the shooting before she left the scene.

¶ 8    When police arrived, they first observed the victim's braids strewn across the hallway floor. They then saw the victim lying on the floor with a gunshot wound. The victim was taken to the hospital, underwent surgery, and was in stable condition at the time of the detention hearing. The victim identified defendant as the person who shot her. The victim's cousin identified defendant as the person who shot the victim. One of defendant's children witnessed defendant shoot the victim.

¶ 9    Defendant was already on pretrial release for an unrelated domestic battery case when the shooting took place. The State filed a petition to revoke defendant's pretrial release in the unrelated domestic violence case based on this new offense and asked the court to order defendant detained pending trial. The State alleged in its petition that defendant committed a detainable offense, that she posed a real and present threat to a person or the community, and that no conditions of pretrial release could mitigate the threat posed.

¶ 10    At the pretrial detention hearing, the State argued that the proof was evident and the presumption was great that defendant committed the charged offense. The State contended that defendant posed a real and present threat to the victim and the community because the shooting was unprovoked and defendant lost her temper, escalating the situation to a shooting. Defendant was already on pretrial release on a domestic battery charge and the State argued that, if

defendant became angry, she would not hesitate to shoot someone else, just as she did not hesitate to shoot the victim here over the minor issue of the victim not doing the dishes.

¶ 11    Defendant argued in mitigation that the victim was the one who instigated the physical confrontation. Defendant claimed that, after the situation became physical, she called the police to remove the victim from her home. The victim snatched the phone from defendant and hung up. At that point, defendant turned around and saw the victim holding a gun. Defendant argued that she acted in self-defense when she shot the victim as she needed to protect herself, her children, and the victim's children. Defendant stated that she has a graduate degree in software development, has a job, and volunteers at her children's school. She has no prior criminal convictions, and she asked the court to order her released pending trial.

¶ 12    The trial court found that the State showed, by clear and convincing evidence, that defendant committed a detainable offense, that she was a real and present threat to the community, and that there were no conditions that could ensure the safety of the community based on the facts of the case. The court found defendant poses a real and present threat because she was already on pretrial release for a violent offense when she threatened the victim with a firearm after an argument about dishes, physically attacked the victim in front of witnesses, pulled out the victim's hair, retrieved a firearm, shot the victim in front of her own child, and then disposed of the firearm. Put simply, the circuit court stated, electronic monitoring and home confinement would not deter defendant from harming the victim or some of the witnesses, committing new offenses, or failing to comply with the conditions of release. The trial court concluded, "there is no condition that I can impose that would mitigate the direct threat that this defendant poses to the victim, and to be perfectly frank, anyone else who gets her temper out of line."

¶ 13   A month later, when defendant was indicted and the case had been assigned to another judge, defendant made an oral request to be released from detention pending trial. Defendant asserted that she was not the aggressor, was in her own home when the shooting took place, and she was not a flight risk. Defendant informed the court that pretrial release would allow her to spend time with her children who had been taken into DCFS custody. Defendant stated that she could work from home, so she would not need to go out into the community. Defendant also asserted that she is a legal gun owner in Indiana. The State asked the court to deny defendant pretrial release as she remained a danger to the community. The trial court ordered defendant to remain detained and found that neither electronic monitoring nor any other conditions of release could prevent this type of behavior from occurring again.

¶ 14   A month after the trial court ordered defendant detained for a second time, defendant filed a motion for relief. Defendant contended that the firearm was legally owned and she had the right to use it in self-defense. Defendant argued that she did not provoke the attack, she is not a danger to the community, and she has no prior criminal convictions. The trial court again found that the State had met its burden of showing, by clear and convincing evidence, all three requirements for pretrial detention. The court noted that the victim was unarmed when she was shot, that defendant left the scene of the shooting before the police arrived, and she disposed of the firearm so that it was never recovered. The trial court explained that defendant posed a real and present threat to the safety of all individuals she might have contact with and have a dispute with.

¶ 15                                    ANALYSIS

¶ 16   All defendants in the state of Illinois are presumed to be eligible for pretrial release. 725 ILCS 5/110-2(a) (West 2024). It is presumed that a defendant can be released on his personal

recognizance with certain conditions imposed, including that the defendant attend all required court appearances, not commit any new offenses, and comply with all other imposed terms of his pretrial release. *Id.*

¶ 17    Pretrial release can only be denied following a detention hearing. *Id.* The burden at a pretrial detention hearing is on the State. 725 ILCS 5/110-2(b) (West 2024). The State bears the burden of demonstrating, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions can mitigate the real and present threat the defendant presents. 725 ILCS 5/110-6.1(e) (West 2024). Where, as here, the circuit court's order denying pretrial release is not based on witness testimony, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 45.

¶ 18    The first matter the State must show by clear and convincing evidence to prevail on a petition for pretrial detention is that the proof is evident or the presumption great that the defendant committed a detainable offense. 725 ILCS 5/110-6.1(e)(1) (West 2024). In this appeal, defendant does not challenge whether the State met its burden as to this requirement at the detention hearing. Defendant is charged with attempted first-degree murder, aggravated battery with a firearm, aggravated discharge of a firearm, aggravated domestic battery, and reckless discharge of a firearm. The basis for the State's detention petition was the attempted murder charge which is a detainable offense under Illinois law. 725 ILCS 5/110-6.1(a)(1.5) (West 2024); 725 ILCS 5/110-6.1(a)(7) (West 2024). We agree with the State and the trial court that the proof is evident or the presumption is great that defendant committed the detainable offense at issue.

¶ 19    The victim, the victim's cousin, and defendant's own child all witnessed defendant shoot the victim. Defendant does not deny shooting the victim but instead argues that she acted in self-defense. The proffered evidence, however, showed that defendant became upset about the victim not doing the dishes and confronted her about it. Defendant removed a pistol from her pocket, made a threat against the victim, and left the gun on the living room table. An unprovoked physical altercation initiated by defendant ensued where defendant bumped the victim with her chest and ripped the braids from the victim's head. Defendant then retrieved the firearm, approached the unarmed victim, and shot her from close range despite the victim and another witness pleading with defendant not to shoot. Defendant then left the residence, taking the firearm with her, and disposed of the weapon so that the gun was never recovered. The State proffered evidence of identification, motive, consciousness of guilt, and the lack of acting in self-defense. The proof is evident that defendant committed the detainable offense at issue.

¶ 20    The second matter the State must demonstrate by clear and convincing evidence to prevail on a petition for pretrial detention is that the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. 725 ILCS 5/110-6.1(e)(2) (West 2024).

¶ 21    Defendant argues that she does not pose a real and present threat to the safety of others or the community. She contends that she does not have any criminal history to suggest a propensity for violence and no prior criminal convictions. As for the pending domestic violence case, defendant points out that it is a misdemeanor case with the father of her child. Defendant had multiple orders of protection against that man at the time of the alleged offense and defendant herself was injured during the incident. During the incident giving rise to this case, defendant called the police twice: once to have the victim removed from the home and once after the

shooting, which she insinuates are not actions that would be taken by someone who was attempting to commit a first-degree murder. Defendant retains the position that the victim was the aggressor and defendant only acted in self-defense.

¶ 22    To determine whether the defendant poses a threat to the safety of others or the community, the trial court can look to a number of factors to determine whether the defendant is dangerous, including the nature and circumstances of the charged offense, the history and characteristics of the defendant, the identity of the persons to whom the defendant is believed to pose a threat, whether the defendant is known to possess or have access to a weapon, and whether the defendant was on pretrial release at the time of the current offense. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 23    Here, various considerations support the conclusion that defendant poses a real and present threat to the safety of others. The nature and circumstances of the offense charged were that defendant reacted to a minor dispute about household chores by initiating a physical altercation with the victim, physically bumping her and then ripping the braids from her head. When the victim rose from the floor after tussling with defendant, defendant was pointing a gun at her. Despite the victim pleading for defendant not to shoot, defendant shot the victim in a residence where there were several children, including one who witnessed the shooting itself.

¶ 24    As for the identity of those to whom defendant poses a threat, the proffered evidence showed that defendant is alleged to have engaged in violence against the father of her children by biting him. The proffer demonstrated that defendant becomes violent when angry. Defendant was reportedly willing to physically attack the father of her children and to shoot and attempt to kill someone she was living with and had been friends with for three years. Now, the father of defendant's children, the victim in this case, and the victim's cousin are all presumptively going

to testify against defendant, and it would be reasonable for those individuals to fear for their safety should defendant be free.

¶ 25   The proffer also showed that defendant has access to a firearm. Defendant herself provided evidence that she owned and possessed a gun. The weapon was taken from the residence after the shooting and has never been located by law enforcement. The proffer also showed that defendant was already on pretrial release at the time of the shooting. Putting defendant on pretrial release with the condition that she not commit any new offenses has been shown to be ineffective to protect the other people from defendant's violence. Based on the specific articulable facts of the case, there was clear and convincing evidence that defendant poses a real and present threat to the safety of other people and the community.

¶ 26   The third matter the State must demonstrate by clear and convincing evidence to prevail on a petition for pretrial detention is that no condition or combination of conditions can mitigate the real and present threat the defendant presents. 725 ILCS 5/110-6.1(e)(3) (West 2024). In determining which conditions of pretrial release, if any, would ensure the safety of any person or the community, a court may consider a number of factors, including matters such as: (1) the nature and circumstances of the charged offense, (2) the weight of the incriminating evidence, (3) the defendant's history and characteristics, and (4) the seriousness of any threat the defendant poses to any person, persons, or the community. 725 ILCS 5/110-5(a) (West 2024). Some of these considerations regarding whether any conditions can mitigate the threat of harm overlap with those matters considered when determining whether defendant poses a threat to the safety of others or the community.

¶ 27   Defendant takes issue with the expressed reasoning of the trial court when it concluded that no conditions of release could mitigate the real and present threat defendant presents.

Defendant points out that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized (quoting 725 ILCS 5/110-6.1(f)(7) (West 2024))." Defendant acknowledges that the trial court analyzed and gave reasons as to why no conditions of pretrial release could mitigate the threat she poses. However, defendant suggests that the trial court only gave "generic reasons" against electronic monitoring and home confinement which "could be said about any defendant."

¶ 28    Contrary to defendant's assertions, the record establishes the trial court's contemplation of the issue and its conclusion, based on the specific facts presented, that no conditions of pretrial release could mitigate the threat defendant poses. The trial court specifically explained the limitations of home confinement and electronic monitoring and how those conditions would not diminish the risk posed by defendant. In conclusion, the trial court explained that "there is no condition that I can impose that would mitigate the direct threat that this defendant poses to the victim, and to be perfectly frank, anyone else who gets her temper out of line."

¶ 29    As set forth above in addressing the risk defendant poses to others, the nature and circumstances of the charged offense are to be considered in determining whether any conditions of pretrial release could mitigate the safety threat posed. See 725 ILCS 5/110-5(a) (West 2024). The facts articulated here were that defendant shot her friend after a dispute about doing the dishes. The victim was unarmed and was pleading with defendant not to shoot her. There were multiple witnesses to the shooting, including defendant's own child, and it was still not enough to stop defendant from acting on her anger. As the State sets forth in its response brief, "[t]he disproportionate violence defendant used to address a minor dispute, her inability to control her anger and deescalate situations, and her access to weapons make her a real and present threat to the community." The trial court recognized this notion when it explained, for example, that home

confinement and electronic monitoring could not ensure the safety of others where it is still possible for defendant to move freely to some extent where she could again get angry and harm someone else.

¶ 30    As to the weight of the incriminating evidence, the proffered evidence contains corroboration from multiple witnesses. The victim and the victim's cousin have both identified defendant as the shooter. Both the victim and her cousin have asserted that defendant was the sole aggressor while the victim was unarmed and only attempted to protect herself. The State also set forth the motive of defendant's anger and her consciousness of guilt evidenced by her taking the weapon with her as she left the house and then disposing of it so that it was never recovered by the police. Defendant showed a willingness to conceal potential evidence of a crime. Defendant's anger had also recently been displayed in a domestic battery incident against her children's father. When all the potential incriminating evidence in the record is taken into account, it is apparent that the weight of the evidence against defendant is strong.

¶ 31    As is also set forth above, the threat defendant poses to other people and the community is serious. She has a history of possession of and access to firearms, a history of using a firearm in anger, has allegedly acted on her anger with criminal violence twice in quick succession, and has demonstrated an unwillingness to comply with prior conditions of pretrial release. "[A] defendant's release on conditions depends on the court having confidence that the defendant will comply with those conditions." *People v. Vincent*, 2024 IL App (4th) 240218, ¶ 6. The only way to ensure the safety of others and the community here was to order pretrial detention. Based on the specific articulable facts and defendant's prior disregard for the conditions of pretrial release, releasing defendant from custody pending trial would jeopardize the safety and security of the victim, other witnesses, and members of the community.

¶ 32                                    CONCLUSION

¶ 33    Accordingly, we affirm.

¶ 34    Affirmed.